**David Obie DARBY, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–95–010–CR.

Court of Appeals of Texas,
Fort Worth.

April 18, 1996.

Rehearing Overruled June 20, 1996.

**616**

Ward Casey, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section; Sylvia Mandel, Michael Klein, Richard Salamy, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Before DAY, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

David Obie Darby pled not guilty to the offense of indecency with a child by sexual contact, but pled "true" to two enhancement paragraphs of the indictment. A jury found him guilty of the offense, and the court assessed punishment of thirty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Darby's appeal protests that the prosecutor's closing argument impermissibly commented on his failure to testify; that a sexually explicit magazine in evidence should have been ruled inadmissible; that the trial court erred by overruling his motion for new trial without a hearing; and that he had ineffective assistance from trial counsel. We affirm.

The female complainant was thirteen years of age, living with her unemployed mother, at the time of the charged offense. The mother, D.L., had sought work as a babysitter by placing the following classified ad in a newspaper:

Infant care, $250 a week, call details, south Arlington, [telephone number].

In response to the ad, Darby telephoned, told D.L. his name was "Vance," and asked

whether she would baby-sit after day-care hours, on weekends and at night. D.L. declined, so Darby asked whether she knew any teenage girls who would be interested in baby-sitting at those times. When D.L. mentioned her thirteen-year-old daughter, Darby said he owned "Benbrook Photography and Video Studio" and asked about the daughter's physical appearance. Darby suggested that if they could make an arrangement for baby-sitting by the daughter, he might be able to use her as a photography model for a video he wanted to make for a jet ski company. They made an appointment for Darby to meet D.L.'s daughter, and he came to their house. Darby again said his name was "Vance," and seemed to make photos of the daughter. Darby had her pose in the living room, then standing by a closet door, then sitting on the edge of a bed. She was always fully clothed, although she changed clothes, at Darby's request, so her appearance would not be the same in every photo. He also persuaded her to pose with a large teddy bear from her room.

During the camera session, D.L. left the room to answer a telephone call that lasted ten or fifteen minutes. She then went outside and noted the license plate number on Darby's car, because she had become suspicious of him. Darby had come to their house in a different car than one he had described to D.L. earlier, had no business cards, did not arrive with the backdrops or special lighting equipment he had discussed, and she thought the camera looked "junky." When she came back into the house, her daughter was "about in tears, crying" and said she didn't want to be a model anymore.

Darby told D.L. the daughter took offense when he was trying to adjust her bra strap to keep it from showing in the photo he was posing. D.L. asked Darby for the roll of film he had used, and he gave her one that she later discovered was blank. Darby had been seated on the floor, and when he stood, D.L. saw a wet spot at the crotch of his pants. He acted embarrassed and said he must have spilled his Coke there.

After Darby left, D.L. took the roll of film to a one-hour developer, where she was told it contained no photos. The daughter then told D.L. that, during the camera session, Darby had put his hand inside her shirt and touched her breast. D.L. was unable to find a listed telephone number for a photography studio by the name Darby had given them, so she called the police.

At the trial, the daughter testified that Darby had put his hand under her blouse and bra and touched her breast and under her skirt and inside her panties and touched her vagina. She also testified that when D.L. returned from the telephone call during the camera session, the daughter noticed a wet place on the front of Darby's pants, "like he had spilled something on them." The daughter testified that after she already had noticed the wet pants, Darby took a Coke can she had left on the floor, shook some Coke onto his pants, took a towel from the floor, and said he had spilled Coke on his pants.

■ Darby's first point of error asserts that his failure to testify was commented on by the prosecutor in closing argument.

At the trial's start, in opening statement to the jury, Darby's trial attorney (who is not his counsel on this appeal) told jurors: "and then after the State rests—and the Defense will call some witnesses—*you will hear the other side of the story.*" [Emphasis added.]

At the trial's end, the sequence of closing arguments to the jury was: a prosecutor made the first part of the State's closing argument; followed by the defense attorney's closing argument for Darby; followed by a second prosecutor who made the concluding address to the jury. *See* TEX.CODE CRIM.PROC.ANN. art. 36.07 (Vernon 1981).

When the first prosecutor had finished his portion of the State's closing, Darby's trial attorney argued for the defense, telling jurors: *"But there is—like I said, there's two sides to every coin."* [Emphasis added.]

After Darby's closing, the second prosecutor made the concluding address to the jury and said: "[Defense Attorney] has told you that there's two sides to everything. Did you hear two sides to everything?" This drew the defense attorney's objection that the prosecutor was commenting on Darby's

failure to testify, but the objection was overruled.

Continuing, the prosecutor told jurors:

*What you heard from the witness stand* is [complainant's] testimony that a man touched her ... in her vaginal area.... *That is what you heard from the witness stand.* [Emphasis added.]

On appeal, Darby contends that he was the only one who could have given testimony to refute the prosecution's witnesses, so the prosecutor's rhetorical question to the jury was an impermissible comment on Darby's failure to testify. He argues that comments on what the jurors had heard from the witness stand re-emphasized Darby's failure to testify. Darby relies on the established principle that a prosecutor's argument is improper if it calls the jury's attention to an absence of evidence that can be supplied only by the accused's testimony. *Madden v. State,* 799 S.W.2d 683, 700 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Cook v. State,* 702 S.W.2d 597, 600 (Tex.Crim.App.1984).

Generally, article 38.08 of the Texas Code of Criminal Procedure, prohibits a prosecutor from alluding to or commenting on the fact that a criminal action defendant did not testify, but an exception may exist where the prosecutor's jury argument is only answering an earlier argument by the defense attorney. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988).

■■■ To be considered impermissible, an argument must leave jurors with the necessary implication that they have just heard a comment on the defendant's failure to testify. *Swallow v. State,* 829 S.W.2d 223, 225 (Tex. Crim.App.1992). An argument is not impermissible just because a jury *might* construe it as a comment on the failure to testify. *Id.* An appellate court's task is to determine whether, in light of a prosecutor's argument, a jury would naturally and necessarily consider the argument a comment on the accused's failure to testify. *Montoya v. State,* 744 S.W.2d 15, 35 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Curry v.*

*State,* 861 S.W.2d 479, 485–86 (Tex.App.— Fort Worth 1993, pet. ref'd.).

■ An indirect allusion to a defendant's failure to testify is not reversible error when invited by argument of the defendant, if the prosecutor confines the invited argument to the area of invitation. *See Allen v. State,* 693 S.W.2d 380, 386 (Tex.Crim.App.1984); *Harrison v. State,* 766 S.W.2d 600, 602 (Tex. App.—Fort Worth 1989, pet. ref'd). Relying on this principle, the State contends that in Darby's case, the prosecutor's rhetorical question and subsequent comment about the witness stand testimony were invited argument, and we agree. The record persuades us that the prosecutor's rhetorical question and the other complained-of comments made during his concluding address to the jury were invited by earlier arguments of Darby's trial attorney. We hold that the trial court did not commit reversible error by allowing the prosecutor's rhetoric and comments, and we overrule point of error number one.

■ Darby's second, third and fourth points of error concern evidentiary rulings related to State's exhibit 4, a magazine called "Titty Bear." Darby contends each ruling was an abuse of the trial judge's discretion.

His second point of error complains that the trial court abused its discretion by admitting the magazine into evidence, because the State had failed to connect the magazine to Darby. The third point asserts abuse of discretion because the evidence failed to establish Darby knew about a section in the magazine titled "Young Nookie," which contains sexually explicit photographs of a female posed with a teddy bear.

In addition to the specific issues contained in Darby's second and third points of error, we will also construe them as contentions that the complained-of evidence was factually insufficient to show his intent to commit the offense charged. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). This requires us to view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Clewis,* 922 S.W.2d at 129, 134. Before we make that determination, however, we will examine all of Darby's points of error, mindful that in our review of the evidence, we are not to "find" facts or reweigh the evidence in order to substitute our own judgment of the evidence for that of the jury. *Id.,* at 135.

A hearing to determine the magazine's admissibility was held outside the jury's presence, and Detective Acklen testified that he found the magazine under some clothing in Darby's bedroom closet while searching his house with Darby's consent.

If this had been a prosecution for possession of contraband found at Darby's home, the State would have had to affirmatively link Darby to the contraband to an extent that there would have been a reasonable inference that he both knew about the contraband and had control over it. *Travis v. State,* 638 S.W.2d 502, 503 (Tex.Crim.App. [Panel Op.] 1982). However, the magazine found in his bedroom closet was not contraband.

 At trial, Darby failed to object on grounds that the State had not affirmatively linked him to the magazine or that it had not established that he had knowledge of its contents. Instead, he made a general objection: "It [the magazine] doesn't have any *relevancy* to whether or not Mr. Darby committed an offense, if he did." [Emphasis added.] A general objection will not preserve error unless its grounds are obvious, with a record that clearly shows the State, defense and trial court all recognized the nature of the objection. *See Roeder v. State,* 688 S.W.2d 856, 859 (Tex.Crim.App.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 349 (1985); *Jones v. State,* 843 S.W.2d 92, 98 (Tex.App.—Dallas 1992, pet. ref'd).

We conclude that Darby's objection that the magazine lacked relevancy did not make obvious an intention to object in the trial court on the grounds he now urges in the second point of error. The complaint that the State failed to affirmatively link him to the magazine is being raised on appeal for the first time. We hold that the grounds asserted in the second point of error were waived by not preserving those grounds by

specific objection at trial. *See* TEX.R.APP.P. 52(a); *Martinez v. State,* 867 S.W.2d 30, 40 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Coffey v. State,* 796 S.W.2d 175, 179 (Tex. Crim.App.1990); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App.1986).

Nevertheless, in an exercise of caution, we have considered Darby's contention that the State failed to affirmatively link him with the magazine. We find it significant that Darby's possession of the magazine was not unlawful, unlike cases in which a home's search discovers contraband. It was found inside Darby's personal bedroom closet, conveniently accessible to him on a daily basis.

On appeal, the State's brief comments: "The State admits the magazine portrays very young appearing, although physically mature, young women in sexually explicit poses. The articles are likewise crude and vulgar stories involving sexual activities." The magazine contains a disclaimer that all the models are over eighteen years of age, and the cover includes a photo of a female wearing her hair in pigtails with ribbons, embracing a teddy bear. She is wearing a blouse, but naked below the waist, sitting with her knees drawn up and legs spread. Other sexually explicit photos of the model, posed with a teddy bear, are in the magazine.

Evidence is relevant when it has a tendency to make the existence of any fact more probable or less probable than it would have been without the evidence. TEX.R.CRIM. EVID. 401. A trial court is afforded the discretion to decide the relevance and admissibility of evidence, and unless the court has abused that discretion by ruling on relevance arbitrarily or capriciously, the ruling will not be disturbed on appeal. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App.), *cert. denied,* 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993).

The record shows the trial judge's awareness that the indictment's accusation made it necessary that the State prove Darby touched the complainant with the specific intent to arouse and gratify his sexual desire. *See Morgan v. State,* 692 S.W.2d 877, 880 (Tex.Crim.App.1985). When the hearing

ended, the court's ruling on the magazine's admissibility was:

> Well, the Court feels like the State does have the burden of proving *intent* in this case. And I think [the magazine is] *relevant* in that regard, so I'm going to admit the exhibit.
>
> So your objection to the exhibit is overruled.
>
> (State's Exhibit No. 4 received.) [Emphasis added.]

■ The magazine was circumstantial evidence. Because knowledge and criminal intent are intangibles, they can only be proved by circumstantial evidence. *Arnott v. State,* 498 S.W.2d 166, 177 (Tex.Crim.App.1973) (op. on reh'g). Evidence that influences facts that concern ultimate determination of guilt is "relevant." *Lockhart v. State,* 847 S.W.2d 568, 574 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). Circumstantial evidence is admissible if it tends to prove an issue or constitutes a link in the chain of proof even though, standing alone, it might not justify a verdict. *Knapp v. State,* 504 S.W.2d 421, 437 (Tex. Crim.App.1973) (op. on reh'g).

Evidence that the magazine was found in Darby's bedroom closet and contained sexually explicit photographs of a young female posed with a teddy bear, when considered with evidence that Darby was accused of having masqueraded as a professional photographer and having pretended to photograph the young female complainant in poses with a teddy bear, and with testimony that he reached under her blouse and skirt, and inside her underwear, to touch her breast and vagina, presented affirmative circumstantial links between the magazine, Darby, and the charged offense.

It was for the jury to decide whether the touching was merely incidental contact during the pretended camera session or whether they believed, beyond a reasonable doubt, that Darby touched the complainant with an intent requisite to the charged offense. Despite the magazine's admission into evidence, the record shows that the jurors did not have it during their deliberations, and none of their nine notes to the judge asked a question about it.

The jurors' second note to the judge asked for all of the exhibits except the magazine. Darby asks us to interpret that as meaning the magazine had an "extremely prejudicial effect" and that the jury "apparently was repulsed" by it. However, for us to draw that inference from the jury's second note, we would have to try to accomplish the impossible task of "reading the mind" of each juror. Any interpretation we might place on the jurors' deliberative reasoning would be no more than guesswork.

■ We conclude that the trial court did not act arbitrarily or capriciously by admitting the magazine found in Darby's bedroom closet as a circumstantial link that was relevant to proving his intent to commit the offense. The record shows that during the hearing to determine the magazine's admissibility, the defense attorney was allowed to cross-examine the detective who found the magazine in Darby's closet. During the cross-examination, Darby's attorney asked whether the magazine in Darby's closet was in a box that was under some clothing or whether it was simply under the clothing but not in a box. The detective testified that the magazine was under clothing, but he did not remember seeing a box.

When the court announced its ruling that the magazine was admissible, Darby's attorney did not object further. In what appears to be nothing more than a side-bar remark about the just-concluded hearing, his attorney said: "The State has shown no connection between the possession of sexually explicit material and the box." The court responded by merely admonishing the lawyer that his earlier *objection* had already been ruled upon.

■ On appeal, Darby argues that the trial attorney's remark was meant, and was understood by the trial judge, as a new objection. We disagree, because the attorney did not phrase his remark as an objection, and the hearing had ended. Even if we were to consider the trial attorney's remark as another objection, it preserves nothing for our review, because it does not comport with the wording of any point of error. If an

objection made at trial differs from the complaint made on appeal, a defendant has not preserved any error for review. *See* TEX. R.APP.P. 52(a); *Martinez,* 867 S.W.2d at 40; *Coffey,* 796 S.W.2d at 179; *Thomas,* 723 S.W.2d at 700.

Permitting an appellate court to usurp a trial court's proper exercise of the authority to admit and exclude evidence, would render the trial process a futile exercise. *Cruse v. State,* 882 S.W.2d 50, 52 (Tex.App.—Houston [14th Dist.] 1994, no pet.). Allowing a party not to make a particular argument in the trial court, yet present the argument on appeal would effectively circumvent the trial court's function of ruling on such arguments. *Id.* To preserve a complaint for appellate review, a party must have presented the trial court with a timely objection stating the specific grounds for the ruling desired, if the grounds are not apparent from the objection's context. TEX.R.APP.P. 52(a). Specific and lawful grounds for an objection are not apparent from the context of the trial attorney's side-bar comment that the State had not connected the magazine to a box.

A "box" objection was not within the scope of Darby's second point of error, which asserted that the State failed to connect the magazine to *him,* not to a box. The detective testified that he did not recall the magazine being in a box, and the only mention of a box during testimony was in a cross-examination question posed by Darby's own attorney, out of the jury's presence. No witness testified, nor was there any evidence, that a box existed. None of Darby's points of error address a failure to connect the magazine to a box.

We hold that the trial court did not abuse its discretion in overruling Darby's objection that the magazine lacked relevancy, and we overrule point of error number two insofar as it challenges the magazine's admissibility.

We also hold that the objection to a lack of relevancy did not preserve Darby's third point of error, which asserts that the State failed to establish his knowledge of the magazine's content. Point of error number three is overruled insofar as it challenges the magazine's admissibility.

After the evidentiary hearing, the jury was brought back to the courtroom, and the magazine was offered as evidence in their presence. The court asked Darby's trial attorney whether he had the same objections he had made previously. He did not restate any objections but simply answered, "Yes, judge, plus one other objection.... We would object on the grounds that it violates Rule 404(b)." *See* TEX.R.CRIM.EVID. 404(b). That rule makes evidence of other acts by an accused inadmissible for the purpose of proving the accused's bad character in order to show that, at the time of the charged offense, he acted in keeping with that character. But the rule provides that such evidence may be admissible for other purposes, including proof of motive, intent, preparation, or plan. *Id.*

The trial court overruled Darby's rule 404(b) objection, and the fourth point of error contends the court's ruling was an abuse of discretion.

■■■ On cross-examination by Darby's attorney, detective Acklen testified that when Darby came to the police station for an interview by police, "He denied the sexual contact, but he did not deny everything else that had taken place." We construe this to mean that Darby did not deny touching the complainant, but denied doing it with a sexual intent. When the charged offense is indecency with a child by touching, and the specific intent to arouse and gratify the accused's sexual desire cannot be inferred from the act itself, as in Darby's case, then the State may rely on other evidence relevant to prove intent. *Morgan,* 692 S.W.2d at 880. Even though that evidence may concern extraneous acts of the accused, it is deemed more probative than prejudicial. *Id.*

Because the trial court's ruling of admissibility concluded that the magazine was relevant to the issue of whether Darby had the requisite intent to commit the charged offense, it is clear the trial court believed the magazine had relevance apart from a tendency to prove Darby's character and show that he acted in conformity therewith in committing the offense. We have already agreed that the magazine was a relevant link on the issue of intent.

Although Darby bases his objection on rule 404(b)'s constraints against evidence of extraneous offenses, well-recognized exceptions to that rule allow proof of extraneous offenses to show motive or illustrate intent where it cannot be inferred from the act. *Crawley v. State*, 513 S.W.2d 62, 64 (Tex.Crim.App. 1974); *Jones v. State*, 716 S.W.2d 142, 161 (Tex.App.—Austin 1986, pet. ref'd.).

We conclude that rule 404(b) would be meaningless if it forbade circumstantial evidence bearing on a source or explanation of a defendant's motive or intent to commit an offense, simply because such evidence might incidentally cause jurors to decide that the defendant not only had the requisite motive or intent, but a bad character as well.

Point of error number four is overruled.

Because points of error five, six, eight, nine and ten each assert an instance in which Darby says his trial attorney deprived him of effective assistance of counsel, we will consider those before we address the seventh point of error.

▮ Point of error number five is that the trial attorney gave Darby ineffective assistance by failing "to specifically object per Rule 403" that the magazine's probative value was substantially outweighed by the danger of unfair prejudice. In pertinent part, that Rule states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

Tex.R.Crim.Evid. 403.

Darby seems to argue that *Montgomery v. State*, 810 S.W.2d 372, 388–90 (Tex.Crim.App. 1990) (op. on reh'g), requires trial counsel to *say* "Rule 403" when objecting on that ground or else the trial court may not recognize that it is being asked to perform a balancing test to determine whether the probative value of the evidence outweighs the danger that it will unfairly prejudice the defendant. We do not construe *Montgomery's* holding to be that narrow.

▮ We note that an isolated failure to object to certain procedural mistakes or improper evidence generally does not consti-

tute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim. App.1984). But, besides objecting on grounds of relevancy, Darby's trial attorney also challenged the magazine's admissibility by objecting: "It's prejudicial. It is meant to inflame the jury." We construe that objection as specific enough to conclude that the trial judge recognized that Darby's complaint was that the magazine's probative value was substantially outweighed by the danger of unfair prejudice to him, and we may presume that the trial judge balanced those possibilities. *See* Tex.R.Crim.Evid. 403; *Nolen v. State*, 872 S.W.2d 807, 812 (Tex.App.— Fort Worth 1994), *pet. ref'd*, 897 S.W.2d 789, 790 (Tex.Crim.App.1995). A trial court is not required to announce for the record that it has completed the balancing test in its own mind, and we may imply from the record that a proper balancing test was done. *Nolen,* 872 S.W.2d at 812.

The standard for appellate review of effectiveness of counsel at the guilt-innocence phase of a noncapital trial was announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by the Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986). *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, appellant must show that his counsel's performance was deficient; second, he must show the deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Having applied the standards for reviewing a complaint of ineffective assistance of counsel to Darby's assertions under point of error number five, we conclude that his trial attorney's objection on grounds that the evidence was prejudicial and inflammatory was not ineffective assistance of counsel that would require reversal of Darby's con-

viction. Point of error number five is overruled.

■ The sixth point of error asserts that Darby was deprived of the effective assistance of counsel because his trial attorney did not object to an advertisement page of the magazine, which was illustrated with sexually explicit photos and captioned "Think you got screwed." The record, however, fails to confirm that the jury ever saw the advertisement page. Accordingly, we hold that the lack of objection to that page by Darby's trial attorney was not ineffective assistance of counsel. Point of error number six is overruled.

■ The eighth point of error complains that Darby was deprived of the effective assistance of counsel because his trial attorney did not object to inadmissible hearsay testimony that Darby had masturbated and ejaculated while adjusting the complainant's panties.

At trial, police officer John Mayfield testified that he was dispatched to the complainant's home at about 2:30 p.m. on the day of the alleged offense. He described the complainant as "upset," and said: "She was glassy-eyed, watery eyes. I can't say she was crying, but she had watery eyes and was shaking. I remember her hands were trembling." The officer interviewed the complainant and asked her to tell him what had happened, in her own words. In front of the jury, the officer summarized part of that interview as follows:

> She stated at the time that [Darby] was adjusting her panties, he told her to face the mirror, and he was taking the pictures from the mirror. And at this time, while he was doing that, she felt jerking movements behind her, movements she can't describe, just that it was jerking. Everytime she tried to turn around, he would insist that she look forward into the mirror.
> ... [W]hen it was over, she turned around and noticed a wet spot on his pants.
> ....
> ... She stated that he possibly got off or masturbated.

Darby asserts on appeal that his trial attorney's failure to object to this testimony was ineffective assistance of counsel because the State did not establish that the officer's testimony was within any of the hearsay exceptions of rule 803(1) through (24) or rule 804 of the Texas Rules of Criminal Evidence.

When considering a complaint of ineffective assistance of counsel, we must indulge the strong presumption that the trial attorney's conduct was within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. To show himself entitled to a reversal on grounds that he was denied the effective assistance of counsel, Darby must prove by a preponderance of the evidence that his trial attorney's representation fell below the standard of prevailing professional norms, and he must show that there was a reasonable probability that, but for counsel's deficiency, the result of his trial would have been different. *Banda v. State*, 890 S.W.2d 42, 59 (Tex.Crim. App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Garcia v. State*, 887 S.W.2d 862, 880 (Tex.Crim.App. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

■ Darby's trial attorney did not state on the record any reason for not objecting to the officer's testimony, but the State argues that it is reasonable to assume the attorney did not object for reasons of trial strategy. The State points out that the jury did not hear Officer Mayfield's testimony until after the complainant's mother had already testified that she saw a wet spot on the crotch of Darby's pants. The State's brief contends that:

> While, [complainant's mother] did not use the terms 'masturbation' or 'ejaculate,' the clear implication of this testimony, especially to a jury of adults, was that appellant had derived some sexual gratification during his photographing of [complainant].

We agree. Because the mother's direct evidence and its reasonable inference were already before the jury, we find persuasive the State's argument that the trial attorney's failure to object to what appears to be inadmissible hearsay is reasonably justifiable as

sound trial strategy. A failure to object to inadmissible hearsay testimony does not always constitute ineffective assistance of counsel. *Rasmussen v. State*, 822 S.W.2d 707, 713 (Tex.App.—Fort Worth 1991, pet. ref'd).

We also find that, because of the mother's earlier testimony about the spot on Darby's pants, Officer Mayfield's testimony was merely cumulative. The failure to object to cumulative evidence is harmless and will not support a claim of ineffective assistance of counsel. *Marlow v. State*, 886 S.W.2d 314, 316, 318 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

We hold that Darby has not proven ineffective assistance of counsel under point of error number eight, and the point is overruled.

Darby's ninth point of error asserts that he was deprived of the effective assistance of counsel when his trial attorney failed to object to the mother's testimony that Darby had asked her to urinate on him. That testimony is part of the following exchange during a prosecutor's redirect examination of the mother:

Q. [The defense attorney] asked you about [Darby] wanting you to be a secretary. Did that ever happen?

A. No, sir. He didn't ask me about being a secretary. He asked me if I would urinate on him while he made a video for America's Funniest Videos is the only job that he ever offered me personally.

The jury heard this testimony without objection from Darby's trial attorney. Darby now argues that the testimony was evidence of an extraneous crime, wrong, or act within the scope of rule 404(b) of the Texas Rules of Criminal Evidence, and that the evidence had no probative value apart from showing Darby's conformity to bad character generally and convincing the jury that he was a "nasty man."

The State replies that the defense attorney's failure to object was based on sound trial strategy, arguably justifiable to avoid further exploration of that topic. We do not disagree, and also find it reasonable trial strategy for the trial attorney to have reckoned that the jury might give the testimony no credence or might dismiss it as a reference to an absurd and crude conversation undeserving of rejoinder. Outrageous and vulgar remarks, such as the mother attributed to Darby, are not criminal misconduct, and we are not persuaded that vulgarity or coarse behavior is the type of misconduct contemplated by rule 404(b). We hold that rule 404(b) has no application to the complaint made by Darby's ninth point of error.

We hold that Darby has not met his burden of proving by a preponderance of the evidence that the trial attorney's failure to object to testimony about Darby's vulgar remarks constitutes ineffective assistance of counsel. The ninth point of error is overruled.

The last protest grounded on an alleged ineffective assistance of counsel is point of error number ten. It complains of the trial attorney's failure to request that the jury be instructed to disregard a police officer's non-responsive testimony that Darby had refused to take a polygraph examination. The non-responsive testimony by Detective Acklen occurred when Darby's attorney cross-examined him about interviewing Darby:

Q. Okay. What happened?

A. Mr. Darby wanted to continue and argue with me. And I concluded the interview. It was pointless. I asked him to leave.

Q. Okay. He wanted to keep telling you that he didn't do it?

A. Yes, sir.

Q. And he insisted on continuing telling you that he didn't do it, but you got—you said, "This is fruitless. I know what you are going to say, so leave?"

A. Well, not just only that he didn't do it, but he had concerns of other issues. He would not take a polygraph. He described that in length. He would not submit—

[DEFENSE ATTORNEY]: Objection, Judge.

THE COURT: Just answer the question, Officer.

I will sustain the objection.

BY [DEFENSE ATTORNEY]:

Q. That was not responsive, Detective.

But he tried—he wanted to insist on telling you that he didn't do it. And you were tired of hearing that, so you told him to leave?

A. You are not leaving me an opportunity to tell you what he was arguing about.

THE COURT: I don't think he asked you what he was arguing about.

THE WITNESS: You are correct.

BY [DEFENSE ATTORNEY]:

Q. The main thrust of his argument was, "I didn't do it"?

A. Yes, sir.

■ The law generally forbids admission of evidence that the accused refused a polygraph test, *Renesto v. State,* 452 S.W.2d 498, 500 (Tex.Crim.App.1970), *Washburn v. State,* 167 Tex.Crim. 125, 318 S.W.2d 627, 637 (1958) (op. on reh'g), *cert. denied,* 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 834 (1959), and this court has held that any reference to polygraph or lie detector tests is improper even when the test result is not disclosed. *Russell v. State,* 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.). Nevertheless, the admission of such evidence in the trial court is not grounds for automatic reversal, because a failure to object to it at trial may waive the point for consideration on appeal. *Leach v. State,* 548 S.W.2d 383, 385 (Tex.Crim.App.1977); *Cook v. State,* 388 S.W.2d 707, 709 (Tex.Crim.App.1965).

■ Darby's trial attorney did object to the evidence, but did not ask that the jury be instructed to disregard it. On appeal, Darby advocates that he was entitled to a jury instruction similar to the following:

> [T]here was some testimony from the last witness regarding whether or not the defendant chose to take a polygraph test or not, and I am telling you that you are to completely disregard that statement.
>
> You know, our freedoms in America and the Constitution of the United States are not founded upon whether or not some one takes a polygraph test or not. So you are not to consider any evidence regarding any polygraph test . . .

Darby argues that with such an instruction, a reasonable probability exists that the result of his trial would have been different.

The State submits that the trial judge's annoyance with the detective's non-responsive answer is apparent from the record and therefore was apparent to the jury, and by asking the court to instruct jurors to disregard the answer he would have served only to re-emphasize that Darby had refused to take a polygraph test. Accordingly, the State suggests that, within a reasonably sound trial strategy, Darby's attorney made his objection, which was sustained, recognized that the trial judge's annoyance with the detective was apparent, and, to avoid the additional emphasis, moved on without asking that the jury be instructed.

Darby's burden under point of error number ten is to show both that his attorney's performance was deficient and that the deficiency deprived him of a fair trial. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Darby must show by a preponderance of the evidence that the result of his trial would have been different if his representation had been more professional. *Banda,* 890 S.W.2d at 59. The record is clear that even if Darby's trial attorney had asked for and received a jury instruction to disregard the detective's non-responsive answer, the jury still had the testimony of the complainant and her mother. The complainant testified that although Darby had her pose fully clothed, he reached his hand underneath her outer clothing and inside her underwear and touched her breast and vagina. Jurors also had the detective's testimony that Darby did not deny masquerading as a photographer, or using a false name, but only denied having "sexual contact." Even with an instruction to disregard the answer about Darby's refusal to take a polygraph examination, jurors heard ample testimony on which to decide whether they believed beyond a reasonable doubt that Darby was guilty of the offense as charged or whether they believed he contrived the fraudulent camera session, yet did not commit the alleged sexual contact. We conclude that there is no reasonable probability that the jury's decision as to Darby's guilt would have been any different had the jury been in-

structed to disregard the detective's comment about the polygraph.

We find that Darby has not proven by a preponderance of the evidence that but for his trial attorney's failure to request a jury instruction, the result of his trial would have been different. We hold that Darby has not shown that the failure to ask for a jury instruction was ineffective assistance of counsel or that he was prejudiced thereby. Point of error number ten is overruled.

■ The final matter for consideration is point of error number seven which protests that the trial court abused its discretion by denying Darby's motion for new trial without conducting a hearing. For this proposition, Darby relies on *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App.1993). If we should find that the trial court was required to conduct a hearing on the motion for new trial, then it would be necessary for us to reverse and remand this case to the trial court for such a hearing. *Id.*

The State also relies on *Reyes* and contends that no hearing was required, because the allegations of the motion for new trial were determinable by the trial court, from the record. *Id.* After a review of the record, we agree with the State's contention, find no abuse by the trial court in determining Darby's motion for new trial without a hearing, and overrule point of error number seven.

Finally, Darby's challenges to the factual sufficiency of the magazine evidence he describes in points of error two and three are overruled, because we have reviewed all of Darby's points of error and the evidence, without the prism of "in the light most favorable to the prosecution," and do not find the jury's verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

The judgment of the trial court is affirmed.