

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00024-CR

| | | |
|---|---|---|
| Richard R. Watkins | § | From the 371st District Court |
| | § | of Tarrant County (1238649D) |
| v. | § | February 14, 2013 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00024-CR

RICHARD R. WATKINS                                                APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Richard R. Watkins of continuous sexual abuse of a child and assessed his punishment at confinement for life. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2012). The trial court sentenced him accordingly. In his sole issue, Watkins contends that the trial court abused its discretion by allowing evidence of computer searches for child pornography on

[1]*See* Tex. R. App. P. 47.4.

Watkins's laptop because the evidence had no probative value apart from character conformity and was extremely prejudicial. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Watkins was married to Tammy, and they had four children together: Amy was seventeen years old at the time of trial, Kelly was fifteen, Allison was fourteen, and Jason was eleven.[2] In July 2007, they moved to a house on Oxford Street in River Oaks. In March 2008, the family moved to a house on Amherst Street in River Oaks.

In October 2009, when Amy was fifteen, she hinted to her boyfriend that Watkins was sexually abusing her. Her boyfriend called Child Protective Services (CPS). A CPS investigator spoke with Amy and Kelly, and both girls denied being abused. Although CPS closed its case, Tammy remained suspicious of Watkins's relationship with their daughters based on interactions between them and the fact that Tammy had found child pornography on his computer several times.[3] She made him move out of the family's house the following month to keep him away from the children. After he moved out of the

---

[2]To protect the anonymity of the children in this case, we will use aliases to refer to some of the individuals named herein. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[3]Tammy testified that when she confronted Watkins about what she found, he said someone had hacked into the computer and put it there.

3

house, he saw his family twice—once in November and once in December of 2010.

In April 2011, Amy made an outcry to Tammy that Watkins had sexually abused her. After Amy's outcry, Kelly also admitted that Watkins had sexually abused her. A sexual assault nurse examiner examined and interviewed both girls. Amy also underwent a mental health screening and was provisionally diagnosed with post-traumatic stress disorder. Allison, the youngest daughter, later made an outcry of sexual abuse against Watkins.

After Watkins was arrested, police searched his laptop and found searches for "daddy" plus "daughter" plus "videos or images" and found search terms associated with child pornography. Police also found child pornography videos stored on the laptop.

At Watkins's trial, Amy testified that she was thirteen when the family moved into the house on Oxford Street. At that house, Watkins showed Amy child pornography on his computer. He told Amy that the young girls in the videos were having sex with their fathers and that it was normal to do so. Watkins made her take her clothes off, and he put his fingers inside her female sexual organ. He told Amy that he was going to loosen her up and prepare her for her boyfriend.

Amy further testified that when they moved to the house on Amherst Street, Watkins started coming into the bedroom that she shared with her sister Kelly at night. He performed oral sex on Amy, touched her breasts, and

4

masturbated while he penetrated her female sexual organ with his fingers. He attempted to have her perform oral sex on him once, but she threatened to tell her mother. Amy also said that she once woke up and saw Watkins touching Kelly in her bed. When Amy was fifteen, Watkins tried to have sexual intercourse with her, but she screamed and said she was going to tell her mother; Watkins did not touch her again after that incident. Amy testified that she had lied to CPS when they interviewed her because she was worried what CPS would do to her mother and what Watkins would do.

Kelly was twelve years old when her family moved into the house on Oxford Street. She testified that she went with Watkins to pick up moving boxes to prepare to move to the Oxford house and that on the way back, Watkins pulled over in a parking lot and asked her to lie down in the back seat. He took off her pants and underwear and rubbed his penis on her female sexual organ. Kelly recalled crying and seeing Watkins's semen when he ejaculated. Kelly also testified that she once asked Watkins to take her to her friend's house and that Watkins agreed to do so only if she would do something for him. He took her into his bedroom and told her to take off her pants; she cried and asked him to stop. Watkins licked her female sexual organ and rubbed his penis on it. Afterwards, he took her to her friend's house. Kelly testified about other times when Watkins would put his hand down her shirt to "see if [her] nipple [could] get hard," telling Kelly that he was "preparing" her for her boyfriends so that she would know what

5

to do and how to do it. She said that when they lived in the Amherst house, Watkins would go into her and Amy's bedroom and "rub her vagina" regularly.

Watkins's defense at trial was that the allegations against him had been fabricated.

## III. EXTRANEOUS BAD ACTS

In his sole issue, Watkins argues that the trial court abused its discretion by admitting testimony about what was found on his laptop when he was arrested. He argues that he did not "open the door" to this testimony, that the State could not introduce it to prove his character conformity, and that it was more prejudicial than probative.

### A. Standard of Review and Law on Extraneous Offense Evidence

A complaint about the admission of extraneous offense evidence is reviewed under an abuse of discretion standard. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The test for abuse of discretion is whether the trial court's action falls within the zone of reasonable disagreement. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence of extraneous offenses is generally inadmissible. Tex. R. Evid. 404(a). However, rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. Tex. R. Evid.

6

404(b). Evidence of other crimes, wrongs, or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation. *Id.* Additionally, extraneous offense evidence may be relevant and admissible to rebut a defensive theory. *See Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (op. on reh'g), *cert. denied*, 519 U.S. 1030 (1996); *Jones v. State*, 119 S.W.3d 412, 420–21 (Tex. App.—Fort Worth 2003, no pet.).

Article 38.37 of the Texas Code of Criminal Procedure provides that, notwithstanding rule 404, evidence of other crimes, wrongs, or bad acts committed by a defendant against a child who is the victim of the alleged sexual assault shall be admitted for its bearing on relevant matters, such as to show the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. Tex. Code Crim. Proc. Ann. art 38.37 (West Supp. 2012).

Extraneous offense evidence that is relevant and admissible under rule 404(b) and article 38.37 may nonetheless be inadmissible under rule 403 if the probative value of such evidence is substantially outweighed by unfair prejudice. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). "A proper [r]ule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the

proponent's need for the evidence." *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

### B. No Abuse of Discretion in Admitting Evidence of Computer Searches

Watkins complains of the testimony of Tarrant County District Attorney's Office Investigator James Hollingsworth, who found child pornography and "daddy"-plus-"daughter"-plus-"images"-or-"videos" searches on Watkins's laptop after his arrest. The laptop was not the same one that Watkins used to show Amy pornographic videos at the Oxford house over three years prior to his arrest. Defense counsel objected that the evidence was irrelevant and more prejudicial than probative. The State responded that it was entitled to introduce evidence of the searches to prove Watkins's state of mind and because defense counsel opened the door to this testimony by asking the CPS worker and the sexual assault nurse examiner, during cross-examination, whether there was any evidence corroborating Amy's and Kelly's allegations. The trial court admitted the testimony and granted defense counsel a running objection.

The indictment charged Watkins with continuous sexual abuse of a child by committing two or more acts of aggravated sexual assault of a child on Amy and Kelly. *See* Tex. Penal Code Ann. § 21.02, § 22.021(a) (West Supp. 2012). "[I]ntent to arouse or gratify sexual desire" is an implicit element of sexual assault. *See Sarabia v. State*, 227 S.W.3d 320, 323–24 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App.

8

1998)).  The State may prove intent through circumstantial evidence.  *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Here, the complained-of testimony showed that Watkins viewed the father-daughter relationship as a sexual one; his viewing of child pornography, particularly father-daughter pornography, is relevant circumstantial evidence of his intent to arouse or gratify his sexual desire.  *See Lewis v. State*, 676 S.W.2d 136, 139 (Tex. Crim. App. [Panel Op.] 1984); *Sarabia*, 227 S.W.3d at 324; *Jones v. State*, 119 S.W.3d 412, 420 (Tex. App.—Fort Worth 2003, no pet.); *Darby v. State*, 922 S.W.2d 614, 620 (Tex. App.—Fort Worth 1996, pet. ref'd).  Therefore, the trial court did not abuse its discretion by admitting the investigator's testimony under rule 404(b).  *See* Tex. R. Evid. 401, 404(b).

Regarding Watkins's rule 403 complaint, his viewing of child pornography, specifically father-daughter pornography—even on a different computer than the one he used when he lived with his family—tended to corroborate Amy's testimony that Watkins had once shown her videos of fathers and daughters engaging in sexual acts, as well as Tammy's testimony that she had found child pornography on his computer in the past.  And as we have stated, his viewing of father-daughter pornography tended to show that he viewed the father-daughter relationship as a sexual one.  The testimony had little potential to impress on the jury in some irrational way; the State offered only the investigator's testimony about the searches, not the images or videos found on Watkins's laptop.  The investigator's testimony took very little time to develop, consisting of only six

9

pages of the record. Finally, although Amy and Kelly both testified about the sexual abuse at trial, both had also previously denied the abuse to a CPS investigator, and there was no physical evidence and no eyewitness to corroborate their testimony; thus, the State needed the evidence of Watkins's searches for "daddy" plus "daughter" plus "images" or "videos" to lend credibility to other testimony. For these reasons, we hold that the trial court did not abuse its discretion by admitting the investigator's testimony over Watkins's rule 403 objection.

We overrule Watkins's sole issue. *See Sarabia*, 227 S.W.3d at 324.

## IV. CONCLUSION

Having overruled Watkins's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 14, 2013