COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

MATTHEW ALAN SIMMONS,                                    No. 08-14-00043-CR

§

      Appellant,                                             Appeal from

§

v.                                                         382nd District Court

§

THE STATE OF TEXAS,                                   of Rockwall County, Texas

§

      Appellee.                                             (TC # 2-13-231)

§

## O P I N I O N

Appellant was convicted of indecency with a child by exposure. In statements given to the police shortly after he was arrested, he admitted to exposing himself to a young girl, but maintained it was an accident. In this appeal, he complains of the admission of testimony about child pornography found in his possession that showed children of a similar gender and age as the complaining witness. The State admitted this evidence in part to rebut the mistake theory. It also admitted the evidence to show that Appellant exposed himself to arouse or gratify his sexual desires. For the reasons set out below, we affirm.

### FACTUAL SUMMARY

Appellant was indicted for indecency with a child by exposing himself. TEX.PENAL CODE ANN. § 21.11(a)(2)(West 2011). A jury found him guilty and assessed a six year sentence and $10,000 fine.

Twelve year old Brittany Jones[1] was with her grandfather and his fiancé at a Walmart in Rockwall one February evening in 2013.[2] Brittany went to look for movies and toys while the adults looked at televisions. While on the toy aisle, she saw a particular doll on a shelf too high for her to reach and a man helped her to get it down. He was wearing a distinctive yellow shirt with black stripping and lettering. At trial, Brittany identified the man as Appellant.

Brittany took the doll back to her grandfather to see if he would buy it for her. When he said no, she returned to the toy aisle to put the doll back and the man was still there. He said, "Hey look" and was holding his penis in his hand with his pants fly unzipped. He then said, "Do you want to touch it?" to which Brittany said no. He then said, "Can I touch you?" Brittany replied, "No, leave me alone" and she returned to the electronics section to find her grandfather and his fiancé. The fiancé said that Brittany looked as if she had seen a ghost. Her grandfather changed his mind about buying the doll and said Brittany could go get it. She asked her grandfather's fiancé to go with her because there was a "man talking to her." The man in the distinctive yellow shirt was gone when they went back to the toy aisle.

On the way home, the grandfather was talking about the importance of being careful around strangers and recounted the story of a stranger exposing himself to a relative. This prompted Brittany to say that the same thing had just happened to her. The grandfather immediately returned to Walmart. The store was able to pull up surveillance tape which showed Appellant, wearing a yellow and black shirt, walking through the store, including the toy area.

---

[1] This is a pseudonym assigned to the child. *See* TEX.CODE CRIM.PROC.ANN. art. 57.01(2)(West 2006). In order to maintain the victim's confidentiality, the opinion will refer to the family member witnesses in generic terms.

[2] This case was transferred from our sister court in Dallas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Dallas Court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

There was no camera directed toward where the encounter occurred, but Appellant did walk onto to the toy aisle for a time and was out view.

The police were called to the store and learned that the person in the distinctive yellow shirt had identified himself to a Walmart employee as a truck driver who planned to stay for a time in his cab on the premises. They located Appellant's rig parked behind the store, and after getting permission to search, they found the yellow/black shirt. Appellant first denied to the officers that he had any interaction with children in the store, but later asked one of them if this had "something to do with a kid." Similarly, when questioned by a detective at the station, Appellant first denied exposing himself, but later claimed he did so by accident. He claimed that he had gone to the bathroom and failed to zip up his trousers, and that he was not wearing underwear. He acknowledged seeing a young girl in the toy aisle that saw his unzipped trousers.

At trial, Appellant through cross examination questioned the veracity of the Brittany. He did this by suggesting her grandfather had planted the idea of a man exposing himself to her through the story of the relative. Appellant also developed through cross examination claimed inconsistencies in the accounts which Brittany gave to the Walmart manager and the police in an earlier written statement. He developed through cross-examination that Brittany's grandfather may have returned to Walmart not once, but twice, and the first time they returned Brittany had not said anything about a man exposing himself.

But he also pressed the accident issue, as reflected by his counsel's opening statement:

> He goes to the police station, does talk to the police officer, does remember that he was in the aisle, does remember he helped a little girl and does remember that she appeared to be surprised on the second time around and that he did realize that he had -- his zipper was unzipped and perhaps his penis was sticking out. He immediately put his penis back in, walked away, tried to say I'm sorry. The girl left, and that was it. Never intentionally did anything at all. Never tried to touch her. Never tried to talk to her.

3

On cross examination of the detective, his counsel asked if it was possible that a man can accidently leave his zipper down after a trip to the bathroom. He then asked if the detective was aware that truck drivers don't like to wear underwear because of the way it affects them while driving, and concluded by asking, "And if his zipper is down and he doesn't wear underwear, then it's possible he could expose himself?"[3]

## EVIDENTIARY ISSUE

The single issue in this case pertains to the admission of evidence of child pornography found in Appellant's possession. That testimony came in through an investigator in the Habersham County Sheriff's Office from the State of Georgia. The trial court heard the investigator's testimony outside the presence of the jury, and after hearing argument of counsel, admitted only the following testimony in the guilt innocence phase.

During a prior investigation of Appellant, the investigator had seized a computer from Appellant's residence. The computer contained seven viewable videos described as containing child pornography. The girls in the videos were from seven to ten years old. The titles of the file names were similarly suggestive of child pornography (i.e. "12-year-old daughter"; "seven year old to nine year old Fullsex-Spank" "taboo-Pedo"). The videos themselves were not introduced into evidence, but the Georgia investigator testified that they depicted sexual acts, including intercourse. Some of the children were engaged in sexual acts with adult males. The investigator concluded the material was child pornography.

Appellant's trial counsel cross-examined the investigator's contention that the videos were traceable to Appellant. The computer was taken from a house where Appellant's parents and two brothers also lived. The investigator did not know if the computer had been previously

---

[3] When pressed on this theory the detective astutely responded: "I'm not really familiar with the truck driver underwear situation."

4

owned, or other if others had access to it. There was evidence that the computer had been pawned and would have been in the possession of a pawn shop for a time. The State countered that the computer had various files labeled as "Matt's pictures" or "Matt's music" which tied the contents to Appellant. The computer was found in the part of the house where Appellant slept.

The trial court specifically considered whether the evidence was admissible in light of both TEX.R.EVID. 404(b) and 403. The State offered the evidence to show Appellant's intent at the time of the exposure was to arouse and gratify his sexual desire; it was also offered to rebut the defense of mistake or accident. The trial court restricted the investigator from graphically describing the content of the videos and excluded the videos themselves.[4] The trial court also instructed the jury both in the court's charge and after the testimony was admitted that:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed other offenses or other wrongs or acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses or other wrongs or other acts, if any were committed, and even then, you may only consider the same in determining the intent or the absence of mistake on the part of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

## LAW AND STANDARD OF REVIEW

We take it as a given that a defendant should be tried only for the charged crime and not for his or her criminal propensities. *See Robles v. State*, 85 S.W.3d 211, 213 (Tex.Crim.App. 2002). Accordingly, evidence of other crimes, wrongs, or acts is not admissible to prove the defendant acted in conformity with his or her bad character. TEX.R.EVID. 404(b). But the rule excludes only evidence that is offered solely for the purpose of proving bad character, and thus conduct in conformity with that bad character. *De La Paz v. State*, 279 S.W.3d 336, 343

---

[4] In the punishment phase, the investigator was recalled to the stand and described the details of the videos in more detail.

5

(Tex.Crim.App. 2009). Such evidence may be admissible for other purposes, including proof of motive, opportunity, intent, preparation, plan, or the absence of mistake or accident. TEX.R.EVID. 404(b).

Rebuttal of a defensive theory is one of the "other purposes" for which extraneous offense evidence may be admitted under Rule 404(b). *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009). As the text of the rule states, this includes rebutting the defensive theory of accident or mistake. *See e.g., Morgan v. State*, 692 S.W.2d 877, 881-82 (Tex.Crim.App. 1985)(evidence of other occasions when defendant rubbed children's genitals was admissible to show absence of accident or mistake). It explicitly allows such evidence to prove motive. *Medina v. State*, 7 S.W.3d 633, 644 (Tex.Crim.App. 1999); *Knight v. State*, No. 08-12-00355-CR, 2015 WL 364253, at *6 (Tex.App.--El Paso, Jan. 28, 2015, pet. filed). Extraneous offenses might also be admitted to rebut a claim that the complaining witness fabricated the allegations against the defendant. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(State can show that a defendant has committed similar sexual assaults against unrelated and unconnected children to show it less likely that the complainant fabricated his claims).

We review the trial court's admission of extraneous offense evidence for an abuse of discretion. *De La Paz*, 279 S.W.3d at 343; *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005). So long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible*, 175 S.W.3d at 731. A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-character conformity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344.

*Proof of Motive and Rebuttal of a Defensive Theory*

The State contends that the evidence of the child pornography is relevant to show that Appellant exposed himself for sexual gratification, which is an element of the underlying offense.[5] The State also contends that the testimony about Appellant's possession of child pornography is relevant to rebut the defensive theory of accident or mistake. We find both these rationales persuasive.

There was little dispute that Appellant exposed himself to Brittany. The question was why. If Appellant had some prurient interest in girls of Brittany's age, then the jury might infer his motive was something other than an innocent accident. A number of prior cases have looked at similar situations and have held that such evidence was relevant to motive.

In *Sarabia v. State*, 227 S.W.3d 320 (Tex.App.--Fort Worth 2007, pet. ref'd) the defendant was charged with aggravated sexual assault of a young boy. The State introduced pictures of some of child pornography found on the defendant's computer. *Id*. at 322. In overruling the Rule 404(b) objection, the court noted that because the photos depicted underage boys engaged in sex, they tended to show the defendant's "intent or motive to arouse or gratify his sexual desire via underage boys." *Id*. at 324. As in this case, the trial court in *Sarabia* used an instruction limiting the jury's consideration of the evidence to non-character-conforming purposes. *Id*.

---

[5] The relevant statutory language provides:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:
>
> .    .    .
>
> (2) *with intent to arouse or gratify the sexual desire* of any person:
>
> (A) exposes the person's . . . any part of the person's genitals, knowing the child is present;

[Emphasis added]. TEX.PENAL CODE ANN. § 21.11(a)(2)(West 2011).

7

In *Darby v. State*, 922 S.W.2d 614 (Tex.App.--Fort Worth 1996, pet. ref'd), the defendant appears to have masqueraded as a photographer and arranged to take modeling photos of a thirteen-year-old female. *Id.* at 617. During the "shoot" and under the guise of adjusting her clothing, he inappropriately touched the young girl. *Id.* To prove he acted with the intent to arouse or gratify his sexual desires, the State introduced a magazine found in his possession which depicted young looking females in various stages of undress, one of which was holding a similar prop as he had the victim hold. *Id.* at 619. The trial court properly overruled a Rule 404(b) objection because the evidence went to his motive. *Id.* at 622.

And most relevant in this transferred case is *Wooley v. State*, 2010 WL 5395650 (Tex.App.--Dallas Dec. 30, 2010, no pet.)(not designated for publication). The defendant was convicted of aggravated sexual assault of his stepdaughter. *Id.* at *1. A search of his computer turned up multiple images of child pornography depicting children of a like age. *Id.* at *4. The defendant denied any inappropriate touching at trial. *Id.* Relying on *Sarabia* and *Darby*, the Dallas Court of Appeals held the evidence passed Rule 404(b) muster as it tended to show motive. *Id.* at *9.

We also find the evidence relevant to sustain the State's burden on motive and to disprove Appellant's contention of an accident. Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.EVID. 401. The pornographic material here related not just to children, but to children of a similar age and gender as Brittany. Several of the described videos pertained to adult males sexually interacting with young girls. The fact that someone would have such material on their computer makes it more probable that they have an interest in such adult-child interactions. As parsed in

8

*Montgomery*, it provides the "small nudge" toward proving Appellant's sexual motive. *Montgomery v. State*, 810 S.W.2d 372, 381 (Tex.Crim.App. 1990).

Perhaps recognizing that this material falls within the accident or mistake exception to Rule 404(b), Appellant argues that under *Prior v. State*, 647 S.W.2d 956, 959 (Tex.Crim.App. 1983) the State cannot set up a straw man for the purposes of knocking it down. Stated otherwise, Appellant claims he never advanced a mistake defense so that the State was not justified in rebutting it. But this claim is not supported by the record. Appellant's counsel argued the mistake issue in his opening statement. Appellant's counsel specifically cross examined the detective on the possibility that the exposure was merely a mistake. And Appellant himself made the claim in his police interview. The State could hardly sit idly by and fail to rebut the claim during the trial. *See Bass v. State*, 270 S.W.3d 557 (Tex.Crim.App. 2008) (defendant's opening argument justified admission of extraneous bad acts with other minors); *Knight*, 2015 WL 364253 at *6 (defense opening which denied intent and claimed accident opened door to Rule 404(b) type evidence).

Appellant also suggests that when the State's direct evidence itself shows the intent element of the crime, and when that evidence is unchallenged, then the use of other bad acts testimony fails the relevancy test. *See Montgomery*, 810 S.W.2d at 397 (evidence of father's touching, which was not denied, demonstrated motive without need of extraneous acts evidence). The problem with this contention is twofold. First, Appellant did attack Brittany's testimony that he exposed himself. He cross examined Brittany, her grandfather, his girlfriend, the Walmart manager, and the child forensic interviewer about claimed inconsistencies in Brittany's story. He specifically challenged whether she initially told those persons about actually seeing Appellant's penis.

Moreover, exposure is an act which depending on the circumstances does not always demonstrate intent for sexual gratification. As the trial judge here commented: "[t]his is an exposure case, and this is a case where if you simply prove the act exposure, that that [sic] does not automatically or necessarily get you to the intent to arouse sexual desire or to -- or lack of mistake." For instance, there would be little doubt as to the flasher's intent in *Prior v. State*, who upon exposing himself looked at specific women in the eye and was smiling. 647 S.W.2d at 957-58. But the claim here is a bit more ambiguous. While not terribly common, some men do forget to zip up their pants. It is at least plausible, as acknowledged by the testifying detective, that a man might in that circumstance inadvertently expose himself. In the context of a case where accidental exposure is claimed, and when the credibility of the complaining witness is challenged, the State had the right to put on relevant evidence of intent and lack of accident or mistake. It did not have to rely solely on the strength of the complaining witness's testimony.

### *Rule 403 question*

Appellant also claims that the child pornography evidence should have been excluded because the prejudicial effect outweighed the probative value under Rule 403. Relevant evidence is generally admissible, but it is properly excluded under Rule 403 when its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403; *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App .2007). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it. Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." [Citations omitted]. *Id.* at 883.

We also examine a trial court's Rule 403 decision under an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 391. We recognize that the trial court is in a superior position to

gauge the impact of the relevant evidence and accordingly reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Id*. at 389. In keeping with the presumption of admissibility of relevant evidence, trial courts should favor admission in close cases. *Id*.

In conducting a Rule 403 balancing test, the trial court must consider (1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, such as emotion, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006) (noting these factors as a refinement to a four factor test appearing in prior cases). In practice, these factors may well blend together. *Id.*

In applying these factors, we do not believe the trial court abused its discretion. First, the evidence was powerful in proving motive and disproving some mistake. Such evidence is probative of a defendant's intent to sexually gratify himself by inappropriately interacting with a child. *Wooley*, 2010 WL 5395650 at *9; *Sarabia*, 227 S.W3d at 324; *Darby*, 922 S.W.2d at 620. Second, the State needed this testimony. Other than twelve-year-old Brittany's recollection of what Appellant said to her, there was no other corroborating evidence of what occurred on the toy aisle. There was no video or eyewitness of the event. Appellant also attacked Brittany's credibility by pointing out inconsistencies in what she first claimed and when she claimed it. This attack on her credibility would be an additional justification for the evidence. *See Sullivan v. State*, No. 12-13-00253-CR, 2015 WL 545789 (Tex.App.--Tyler Feb. 11, 2015, pet. ref'd) (mem op. not designated for publication)(admission of nine photos in continuous sexual assault

11

of a child did not violate Rule 403 and were justified in part by credibility attacks on complaining witness); *Pallm v. State*, No. 12-10-00329-CR, 2011 WL 6043025 (Tex.App.--Tyler Nov. 30, 2011, pet. ref'd)(same, attack on credibility).

The tendency for this evidence to evoke a purely emotional response is neutral in this case. Unlike *Sarabia*, *Darby*, and *Wooley*, where the pornography was perhaps less offensive than the underlying charged crime, the material in the child pornography videos here is arguably worse than Appellant's conduct at the Walmart. But the trial court ameliorated this imbalance by not allowing the videos themselves, and permitting only a general description of their content.

Nor was a there a great deal of time spent on this evidence. The direct examination of the investigator spans eight pages of the some 205 pages of actual testimony in the guilt-innocence record. The cross examination was seven pages. The testimony came in through one witness. The Rule 403 hearing, and the argument over the admission, took place after the jury was sent home for the day, or before they were seated the next day. The State's prosecutors used the word pornography only three times in closing, all focused on proving Appellant's intent to gain sexual gratification from his actions. Most of the State's case and closing argument were focused on the events inside the Walmart store on the night of the event.

In summary, we do not find that the trial court abused its discretion in admitting this evidence in the guilt-innocence phase and overrule Issue One. Having found no error in the admission of the testimony, we need not reach the claim that any admission was harmful. We affirm the judgment of the trial court below.

November 4, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)