Opinion issued April 26, 2007




     











In The
Court of Appeals
For The
First District of Texas




NOS. 01-05-00817-CR
           01-05-00818-CR




STEPHEN WAYNE CLOUD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause Nos. 995567 & 995568




MEMORANDUM OPINION

          A jury convicted appellant, Steven Wayne Cloud, of indecency with a child (trial
cause no. 995568 and appellate cause no. 01-05-00818-CR) and sexual assault of a
child (trial cause no. 995567 and appellate cause no. 01-05-00817-CR) and assessed
punishment at 10 years’ confinement, suspended for 10 years’ community supervision,
and a $10,000 fine in each case. In nine points of error, appellant contends that (1) the
trial court erred by failing to grant a mistrial sua sponte after the prosecutor committed
misconduct by asking a question that bolstered the credibility of the child complainant,
(2) the trial court erred by denying appellant’s motion for mistrial after the prosecutor’s
improper jury argument, (3-7) trial counsel rendered ineffective assistance, (8) the
evidence is factually insufficient, and (9) the evidence is legally insufficient. We
affirm.
BACKGROUND
          When the complainant, AJ, was 15 years old, she moved from Arkansas to
Houston to live with her grandmother, Dolores Cloud, and her step-grandfather,
appellant. Soon thereafter, AJ developed a sexual relationship with a 19-year-old
neighbor, Timothy Rushing. On June 3, 2004, after the Clouds caught AJ trying to
sneak out of the house to meet Rushing, they decided to call the police. A deputy came
out that same day and interviewed the Clouds and AJ about her relationship with
Rushing. The deputy told the Clouds that he was going to refer the case to the child-abuse division and that they should expect to hear from the authorities shortly.
          On June 10, 2004, Andrea Myles, a caseworker for Children’s Protective
Services (CPS) visited AJ at the Clouds’ house and then took AJ to the Children’s
Assessment Center for a forensic interview. Appellant followed them in his own
vehicle. Dolores Cloud was at work.
          At the Children’s Assessment Center, AJ gave a videotaped interview about her
relationship with Rushing. At the conclusion of the interview, she was asked whether
anyone else had ever touched her inappropriately. AJ responded that appellant would
occasionally touch her, but he was only “playing around.” She did not mention
anything else about any inappropriate contact with appellant.
          However, while Andrea Myles was watching AJ’s interview through a window
in an adjacent room, she received a telephone call from Dolores Cloud. Myles testified
that Dolores was very emotional and suggested that Myles should ask AJ about an
event that had occurred between appellant and AJ in the garage the night before. 
Myles asked Dolores to come the Children’s Assessment Center to give a statement.
          Myles and Detective Fitzgerald, who was investigating the Rushing case, told
AJ that they had received a telephone call from her grandmother, and that her
grandmother said that she had seen appellant and AJ “fooling around” in the garage the
night before. Fitzgerald testified that AJ was “not happy” about being confronted with
this information and it appeared that she did not want to talk about it. Fitzgerald
advised AJ that they needed to interview her again based on these new allegations.
          During AJ’s second interview, she testified about two events concerning
appellant. The first incident occurred while her grandmother was away one weekend. 
On that occasion, appellant was on the computer, while AJ was watching television in
the same room. When AJ got up to go to the bathroom, appellant “pulled [her] from
behind,” starting “messing with” her breasts under her shirt, and stuck his hands down
her pants and put his finger around the “top part of [her] vagina.” When appellant let
her go, AJ went to her bedroom. AJ testified that she did not tell anyone because she
was afraid “[she] would lose everything [she] had.” Appellant later told AJ that if she
told anyone she would have to leave appellant’s house and go back to her mother’s
home in Arkansas.
          During her second forensic interview, AJ also talked about the “garage incident”
with appellant, which had occurred the night before. On that day, June 9, 2004,
appellant and AJ went on a long bike ride. When they returned, they went inside to say
hello to Dolores, then returned to the garage so appellant could smoke. Appellant
turned off the garage lights, told AJ to get on the back of the car, and he began kissing
her. Appellant told AJ to touch his penis, which she did. He then reached under her
shirt and touched her nipple. He also reached down and touched her vagina through
her pants. While they had their arms around each other, Dolores walked into the
garage. AJ removed her arms from appellant, wiped her mouth, and walked in the
house.
          When confronted with AJ’s allegations, appellant denied initiating any
inappropriate contact with AJ. He testified at trial that AJ had turned out the light in
the garage and started kissing him “for a second” before Dolores walked in. Appellant
speculated that AJ was mad at him for reporting her relationship with Rushing.
          When Dolores arrived at the Children’s Assessment Center, she gave a statement
that, in many respects, corroborated what AJ had said in her second interview. Dolores
said in her statement that, on the evening of June 9, she became suspicious when, after
a long bike ride, AJ followed appellant down to the garage. Dolores noticed that there
were no lights on in the garage, so she sneaked out the back door, around the side of
the house, got down on her knees and peeked into the garage. She watched for about
10 minutes, during which time she saw appellant and AJ “kissing and groping” each
other. She noticed that, at one point, appellant laid AJ across the back of the car, but
AJ moved because it appeared uncomfortable. Dolores saw appellant massaging AJ’s
breast while he was kissing her. Dolores went back to the door between the house and
the garage and opened it very quickly. She saw appellant and AJ “break apart.” AJ
then wiped her mouth and fled into the house.
          At trial, Dolores recanted her statement and claimed that she had made it all up
because, when she talked to Andrea Myles on the telephone, Myles had told her that
appellant had confessed. Dolores testified that she wanted “to add fuel to the fire”
because, at the time, she believed that appellant had confessed to molesting AJ. 
Dolores said that when she found out that appellant had not confessed, she told
everyone that the statement she had made at the Children’s Assessment Center was
untrue. Myles denied telling Dolores that appellant had confessed.
Prosecutorial Misconduct
          In point of error one, appellant contends the prosecutor committed prosecutorial
misconduct when he asked “blatantly improper questions, the answer to which
suggested that the complainant was truthful and the answer to which would expressly
indicate that the complainant was truthful.” Appellant further argues that the trial court
should have granted a mistrial sua sponte based on the prosecutor’s actions.
          During the trial, the following took place during the questioning of Detective J.
Fitzgerald, the investigating officer who was assigned to the Children’s Assessment
Center as a child abuse investigator:
[Prosecutor]: What happens—what do you do if you do not believe the
child?
 
[Fitzgerald]: If we get one I don’t believe the child, I inform the district
attorney that’s working the case, we take the case and review then with,
my feelings this is not a valid case.
 
[Prosecutor]: Would you testify on a case where you did not believe the
child?
 
[Defense Counsel]: Objection. That calls for an improper response, your
honor.
 
[The Court]: Sustained.
 
[Defense Counsel]: Instruction to disregard that, your Honor.
 
[The Court]: Don’t consider that question. You may continue.

          It is generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness, and such opinion is therefore inadmissible evidence. 
See Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (holding testimony that
complainant did not exhibit evidence of fantasizing, that manipulation was less likely
explanation for complainant’s allegations, and that complainant’s allegations were not
result of fantasy constituted improper direct comments on truth of allegations). This
type of testimony is inadmissible “because it does more than ‘assist the trier of fact to
understand the evidence or to determine a fact in issue;’ it decides an issue for the
jury.” Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993)(quoting Duckett
v. State, 797 S.W.2d 906, 914-15 (Tex. Crim. App. 1990)). This rule applies to expert
and lay witness testimony alike. Arzaga v. State, 86 S.W.3d 767, 776 (Tex. App.—El
Paso 2002, no pet.); Fisher v. State, 121 S.W.3d 38, 41 (Tex. App.—San Antonio
2003, pet. ref’d).
          Fitzgerald’s testimony can only be seen as an attempt to directly bolster AJ’s
credibility and as a direct comment on her truthfulness. The clear implication of the
prosecutor’s questions was that, if Fitzgerald had not believed AJ to be truthful, he
would have told the prosecutor that the case was not “valid” and would have refused
to testify in the case. Such bolstering is improper under Schutz.
          However, defense counsel did not object to the prosecutor’s first question about
what Fitzgerald would do if he did not believe a child complainant, nor did he object
to Fitzgerald’s answer that he would talk to the prosecutor and tell him that he felt the
case was not “valid.” Thus, appellant has failed to preserve error on this portion of the
“bolstering” evidence. See Tex. R. App. P. 33.1(a)(1).
          Regarding the prosecutor’s second question—“Would you testify on a case
where you did not believe the child?”—defense counsel made a timely objection, which
the trial court sustained. He also requested an instruction to disregard the question,
which the trial court granted. When matters are injected into the trial that have no
perceived relevance and are potentially prejudicial to the appellant, appellate courts
presume that an instruction to disregard the evidence will be obeyed by the jury. See
Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). The exception to the
above statement occurs when it appears that the matter injected is clearly calculated to
inflame the minds of the jury and is of such a character as to suggest the impossibility
of withdrawing the impression produced on their minds. Id. 
          Appellant argues that the motion to disregard in this case was insufficient to cure
the error caused by the prosecutor’s misconduct in asking the bolstering questions. 
However, to preserve error for prosecutorial misconduct, the appellant must (1) make
a timely and specific objection; (2) request an instruction to disregard the matter
improperly placed before the jury; and (3) move for mistrial. See Tex. R. App. P. 33.1;
Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). Even if an error is such
that it cannot be cured by an instruction, appellant is required to object and request a
mistrial on the grounds of prosecutorial misconduct. See Mathis v. State, 67 S.W.3d
918, 927 (Tex. Crim. App. 2002). Appellant did not request a mistrial. As such, his
point of error is waived.
          We overrule point of error one.
Improper Jury Argument
          In point of error two, appellant contends the trial court erred by denying his
motion for mistrial based on the prosecutor’s improper jury argument at the punishment
hearing. Specifically, appellant contends the prosecutor improperly appealed to the
jury’s feelings and emotions by requesting them to have sympathy for the complainant. 
During closing arguments at punishment, the prosecutor argued as follows:
[Prosecutor]: What’s telling about [this] is and when you think about
punishment, think about what Detective Fitzgerald told you about [AJ’s]
reaction when she was finally confronted with, Hey– I think he said, like
her hand was caught, she just sunk [sic]. Her shoulders went down. 
Sometimes we get caught up in – when we’re in these trials, you look
over and you think, you sort of start to feel sorry for the defendant. 
Before you do that, think about how much sympathy he gave her.
 
[Defense Counsel]: Objection, Your Honor. Sympathy does not play a
part in the role of the jury. Sympathy is not something that they can
consider, Your Honor.
 
[The Court]: Sustained. You may continue.
 
[Defense Counsel]: Ask for disregard (sic).
 
[The Court]: Disregard the last comment. Don’t consider it for any
purpose.
 
[Defense Counsel]: Motion for mistrial.
 
[The Court]: That’s denied.

          Even if we were to assume that the argument was an improper appeal for the jury
to base its punishment on emotion rather than evidence, we hold that any error has been
cured. The trial court sustained defense counsel’s objection and instructed the jury to
disregard the statements. In most circumstances, an instruction to disregard improper
argument is considered a sufficient response by the trial court. See Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000); Phillips v. State, 130 S.W.3d 343, 355
(Tex. App.—Houston [14th Dist.] 2004, aff’d, 193 S.W.3d 904 (Tex. Crim. App.
2006). This is true except in the most blatant cases. Moore v. State, 999 S.W.2d 385,
405-06 (Tex. Crim. App. 1999). 
          Appellant argues that the instruction to disregard was not a sufficient response
by the trial court, and that we should apply the constitutional standard for determining
harmful error, as in Thompson v. State, 89 S.W.3d 843, 852-53 (Tex. App.—Houston
[1st Dist.] 2002, pet. ref’d). In Thompson, the court characterized improper jury
argument that violated the Due Process and Confrontational Clauses of the United
States Constitution as constitutional error and applied Rule of Appellate Procedure
44.2(a). However, appellant provides no authority to support his argument that an
improper appeal to the jury’s emotions involves constitutional error. 
          Given the nature of the prosecutor’s statements and the circumstances of this
case, we conclude that the statements were not so blatant as to render the instruction
to disregard ineffective. See id. at 406. As such, the denial of appellant’s motion for
mistrial was not error.      We overrule point of error two.
Ineffective Assistance of Counsel
          In points of error three through seven, appellant contends trial counsel was
ineffective for failing to (3) preserve the issue of prosecutorial misconduct, (4) make
a bill of exception in support of the admissibility of evidence that the complainant had
made prior sexual assault allegations in Arkansas, (5) make a bill of exception in
support of the admissibility of evidence that the complainant had made prior sexual
assault allegations in Texas, and (6) permitting appellant to testify while using a trial
notebook containing attorney-client material and attorney work product, and (7) failing
to make a bill of exceptions on the work product and attorney-client material that the
State inspected before cross-examining appellant. 
          To prevail on a claim of ineffective assistance of counsel, the defendant must
show that trial counsel’s performance was deficient and a reasonable probability exists
that the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064, (1984). The first prong of the Strickland
test requires that the defendant show that counsel’s performance fell below an objective
standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). Thus, the defendant must prove objectively, by a preponderance of the
evidence, that trial counsel’s representation fell below professional standards. Mitchell
v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong requires that
the defendant show a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different. See Strickland, 466
U.S. at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812. Because the reviewing
court must, however, indulge a strong presumption that counsel’s conduct falls within
the wide range of reasonable professional assistance, the defendant must overcome the
presumption that, under the circumstances, the challenged action “might be considered
sound trial strategy.” Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Any allegation
of ineffectiveness must be firmly founded in the record, which must demonstrate
affirmatively the alleged ineffectiveness. Thompson, 9 S.W.3d at 813 (citing
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We will not
speculate to find trial counsel ineffective when the record is silent on counsel’s
reasoning or strategy. Robinson v. State, 16 S.W.3d 808, 813 n. 7 (Tex. Crim. App.
2000). In rare cases, however, the record can be sufficient to prove that counsel’s
performance was deficient, despite the absence of affirmative evidence of counsel’s
reasoning or strategy. Id.
Prosecutorial Misconduct
          In point of error three, appellant contends that his trial counsel was ineffective
because he (1) did not object to the “bolstering evidence” that was presented through
Fitzgerald, as discussed in point of error one, and (2) did not seek a motion for mistrial
after the trial court sustained trial counsel’s objection to the prosecutor’s questioning
of Fitzgerald about whether Fitzgerald would testify in a case in which he did not
believe the child complainant.
          Generally, an isolated failure to object to certain procedural mistakes or 
improper evidence does not constitute ineffective assistance of counsel. See Ingham
v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). When the record is silent as
to counsel’s reason for failing to object, the appellant fails to rebut the presumption that
counsel acted reasonably. Thompson, 9 S.W.3d at 814. Moreover, the decision not to
object to inadmissible evidence can sometimes be justified as part of a sound trial
strategy. Darby v. State, 922 S.W.2d 614, 623-24 (Tex. App.—Fort Worth 1996, pet.
ref’d).
          The record does not contain any evidence regarding trial counsel’s reasons or
strategy for not objecting to Fitzgerald’s testimony about what he would do if he did
not believe a child complainant. Absent explanations for trial counsel’s reasons for not
objecting, appellant has failed to overcome the presumption that the challenged actions
were sound trial strategy, and his claims must fail. See Ramos v. State, 45 S.W.3d 305,
311 (Tex. App.—Fort Worth 2001, pet. ref’d). Because appellant has failed to show
that his trial counsel’s performance was deficient, we need not reach the prejudice
prong of Strickland. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.
          Regarding trial counsel’s failure to seek a mistrial after the trial court sustained
his objection to the prosecutor’s question about whether Fitzgerald would testify in a
case in which he did not believe the child, we cannot speculate on this issue. Absent
explanations for trial counsel’s reasons for not seeking a mistrial, appellant has failed
to overcome the presumption that the challenged actions were sound trial strategy, and
his claims must fail. Because appellant has failed to show that his trial counsel’s
performance was deficient, we need not reach the prejudice prong of Strickland. See
Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.
          We overrule point of error three.
Prior Sexual Assault Allegations
          In points of error four and five, appellant contends that trial counsel was
ineffective because he did not make a bill of exceptions after the trial court sustained
the State’s objection and prevented trial counsel from presenting evidence regarding
sexual assault allegations that AJ had allegedly made on other occasions. Appellant
argues that “there is no plausible or strategic reason for the failure to make such bills
or offers of proof, but for the explanation that counsel forgot.”
          However, even if we assume that trial counsel simply “forgot” to make the bills
of exceptions, we cannot similarly conclude that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different. That is, appellant cannot
show that, had trial counsel made a bill of exceptions, the result of the case, or the
appeal, would have been different.


 As such, appellant fails to meet the second prong
of the Strickland test.
          We overrule points of error four and five.
Attorney-Client and Work Product
          During appellant’s testimony at trial, he took one of his trial counsel’s trial
notebooks to the stand. After appellant testified that he used the notebook to refresh
his memory about certain events, the State was given the opportunity to inspect
portions of the notebook. In points of error six and seven, appellant contends that his
trial counsel was ineffective for (1) permitting him to testify before the jury while using
the notebook, and (2) failing to make a bill of exceptions after the trial court permitted
the State to examine the folder under the “use before the jury rule.”



          Even if we assume that appellant used the trial notebook at trial counsel’s
instruction, and trial counsel again did not make a bill of exceptions, we cannot
similarly conclude that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different. Nothing in the record shows that the State
actually used the information that it saw in the notebook, and we will not presume that
it did. And again, appellant cannot show that, had trial counsel made a bill of
exceptions to show the content of the trial notebook, the result of the case, or the
appeal, would have been different. As such, appellant fails to meet the second prong
of the Strickland test.
          We overrule points of error six and seven.
Sufficiency of the Evidence
          In points of error eight and nine, appellant contends the evidence is legally and
factually insufficient to support the jury’s verdict in both the indecency with a child
case and the sexual assault of a child case. 
          When evaluating the legal sufficiency of the evidence, we view the evidence in
the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State,
175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for direct and
circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the
credibility of any witnesses, as this is the function of the trier of fact. See Adelman v.
State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839,
843 (Tex. Crim. App. 1991). Instead, our duty is to determine whether both the
explicit and implicit findings of the trier of fact are rational by viewing all the evidence
admitted at trial in the light most favorable to the verdict. See Adelman, 828 S.W.2d
at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the
verdict. Matson, 819 S.W.2d at 843.
          When conducting a factual-sufficiency review, we view all of the evidence in a
neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex Crim. App. 1997). We will set
the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and preponderance
of the evidence. Johnson, 23 S.W.3d at 11. Under the first prong of Johnson, we
cannot conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Watson v. State, 204 S.W. 3d 404, 417 (Tex. Crim. App. 2006). 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury’s verdict. Id. In conducting a factual-sufficiency review, we must also discuss the
evidence that, according to the appellant, most undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We may not re-weigh the
evidence and substitute our judgment for that of the factfinder. King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what
weight to place on contradictory testimonial evidence because that determination
depends on the fact-finder’s evaluation of credibility and demeanor. Cain, 958 S.W.2d
at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may
choose to believe all, some, or none of the testimony presented. Id. at 407.
Sexual assault of a child (appellate cause no. 01-05-00817-CR)
          To obtain a conviction for aggravated sexual assault of a child younger than
fourteen years, the State was required to prove beyond a reasonable doubt that
appellant intentionally and knowingly caused the penetration of the sexual organ of AJ,
a child under the age of fourteen, by his finger. See Tex. Pen.Code Ann. §
22.021(a)(1)(B)(I) (Vernon Supp. 2006). Appellant contends that the evidence is
legally and factually insufficient to show that he penetrated AJ’s sexual organ with his
finger.
 
Legal sufficiency
          The testimony of a child victim alone is sufficient to support a conviction for
sexual assault. See Tex.Code Crim. Proc. Ann. art. 38.07(a) (Vernon Supp.2006),
Jones v. State, 817 S.W.2d 854, 856 (Tex. App.—Houston [1st Dist.] 1991, no pet.)
(“The testimony of a sexual assault victim alone is sufficient evidence of penetration,
even if the victim is a child using unsophisticated language to describe the act.”). 
Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it
has been shown beyond a reasonable doubt. Luna v. State, 515 S.W.2d 271, 273 (Tex.
Crim. App. 1974). See Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)
(pushing aside and reaching beneath natural fold of skin into area of body not usually
exposed to view, even in nakedness, is significant intrusion beyond mere external
contact.”); Murphy v. State, 4 S.W.3d 926, 929 (Tex. App.—Waco 1999, pet. ref’d)
(finding penetration when child testified the defendant put his fingers between her labia
and rubbed on the vaginal opening).
          At trial, AJ testified as follows:
[Prosecutor]: Would you tell the jury what happened?
 
[AJ]: He pulled me from behind and he started messing with my breast
underneath my shirt and he stuck his hand down my pants and started
messing with my vagina.
 
[Prosecutor]: Now, when he did that, and he stuck his hand in your pants,
did he stick his hand underneath your pants or on top?
 
[AJ]: Yes.
 
[Prosecutor]: When you said he started messing with your vagina, what
do you mean? I know it’s embarrassing to talk about it. You need to be
sort of specific.
 
[AJ]: He stuck his finger inside – not inside of my vagina, but on the
outside. I don’t what it’s called there.
 
[Prosecutor]: Top part?
 
[AJ]: The top part of my vagina.
 
. . . .
 
[Prosecutor]: Not, the time in the computer room where you said he
placed his finger insider your pants and on your vagina—and I have to
sort of be a little bit specific about this, embarrassing but you know there
is a crease there. Did his hand go inside the crease, his finger?
 
[AJ]: Yes, it did.
 
[Prosecutor]: Did it penetrate that part?
 
[AJ]: Yes.
 
[Prosecutor]: But what you’re saying, it didn’t go all the way in?
 
[AJ]: Yes. 
 
On cross-examination, the following exchange took place:
 
[Defense counsel]: Did he go inside of your underwear or on top of your
underwear?
 
[AJ]: Inside of my underwear.
 
[Defense counsel]: Your testimony was he did not penetrate your vagina,
correct?

          [Prosecutor]: I’m going to object. That misstates her testimony.

          [Trial court]: Sustained.
 
[Defense counsel]: This is cross-examination, Your Honor. May I ask that
question. It’s a proper question. I’m not trying to misstate anything. I’m asking
a simple question.

          [Trial court]: I’m sustaining the question the way it was phrased.
 
[Defense counsel]: He did not penetrate your vagina, did he?

          [Prosecutor]: I object, same question.

          [Trial court]: That’s overruled. Different question.
 
[Defense counsel]: You can answer.
 
[AJ]: He did penetrate my vagina.
 
[Defense counsel]: What part of your vagina did he penetrate?
 
[AJ]: The inside, not inside of it, but like around it.
 
[Defense counsel]: He penetrated around it?
 
[AJ]: Yes.
 
[Defense counsel]: Would you agree that around it is not inside of it?
 
[AJ]: Yes.
 
[Defense counsel]: How can you penetrate around something like, if this
cup here, if I’m touching around it, I’m not penetrating, am I?
 
[AJ]: No.
 
[Defense counsel]: I’m touching around it, right?
 
[AJ]: Right.
 
[Defense counsel]: That’s not inside of it, right?
 
[AJ]: Yes.
 
[Defense counsel]: So your testimony is that he rubbed around your
vagina, that’s fair. Correct?
 
[AJ]: Correct.
 
Finally, on redirect, the following exchange took place:
 
[Prosecutor]: Describe what you meant when you said “around.” Where
was his finger?
 
[AJ]: Inside the crease of my vagina.
 
[Prosecutor]: So you have the crease here, right?
 
[AJ]: Yes.
 
[Prosecutor]: His finger was inside the crease.
 
[Defense counsel]: Object to him drawing. She can draw it, Judge, but it’s
improper for him to draw.
 
[Trial court]: That’s overruled. You do need the witness herself to do any
indications.
 
[Prosecutor]: Where is — when you said “it didn’t go inside,” what did
you mean by “it didn’t go inside”?
 
[AJ]: It didn’t go inside my hole.
 
[Prosecutor]: The hole, which is where?
 
[AJ]: Inside of my vagina.
 
[Prosecutor]: I understand that. Point on the picture and touch it hard.
 
[AJ]: Right there.
 
[Prosecutor]: So it went inside — we’ll describe these as lips, right?
 
[AJ]: Right.
 
[Prosecutor]: It went inside those two?
 
[AJ]: Yes.
 
. . . . 
 
[Prosecutor]: Did it penetrate the plane of your female sexual organ?
 
[AJ]: Yes.

          Appellant argues that the evidence is legally insufficient to show that appellant’s
finger penetrated AJ’s female sexual organ. Specifically, appellant argues that “it is
obvious that someone coached the complainant into making this claim.”
          However, in a legal-sufficiency review, the jury is the exclusive judge of the
credibility of witnesses and the weight to be given their testimony. Jones. v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of conflicts in the evidence
is within the exclusive province of the jury. Id. It was the jury’s prerogative to resolve
any apparent conflicts within AJ’s testimony in the State’s favor and to accept her
testimony that appellant’s finger “penetrated the plane of [her] female sexual organ.”
Factual insufficiency
          Appellant argues that the evidence is factually insufficient because “the
complainant’s credibility was patently suspect.” Appellant points out that AJ lied to
the workers at the Children’s Assessment Center, and that AJ’s own mother testified
that she had a bad reputation for truth and veracity. Appellant points out that, by
contrast, he presented several witnesses who testified that he had a good reputation for
truth and veracity. Appellant also points out that his wife, Dolores, recanted her
statement implicating appellant when she discovered that he had not confessed. 
Finally, appellant argues that, once AJ realized that the workers at Children’s
Assessment Center knew that she had been seen kissing appellant in the garage, she
used the incident to retaliate against appellant for ending her relationship with Timothy
Rushing.
          Again, we note that the issue of credibility is within the sole province of the jury
in a factual-sufficiency review. See Cain, 958 S.W.2d at 408–09. There is no
objective basis in the record upon which we can conclude that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Watson, 204 S.W. 3d at
417. 
          Because we hold that the evidence is legally and factually sufficient to support
appellant’s conviction for sexual assault of a child, we overrule points of error eight and
nine in cause number 01-05-00817-CR.
Indecency with a child (appellate cause no. 01-05-00818-CR)
          To prove indecency with a child by contact, the State must prove the appellant
(1) engaged in sexual contact with a child and (2) the child was younger than seventeen
years old and not the appellant's spouse. See Tex. Pen. Code Ann. § 21.11(a)(1)
(Vernon 2003). “Sexual contact” is defined to include any touching by a person,
including touching through clothing, of the anus, breast, or any part of the genitals of
a child with the intent to arouse or satisfy the sexual desire of any person. Tex. Pen.
Code Ann. § 21.11(c)(1) (Vernon 2003). Appellant contends the evidence is legally
and factually insufficient to show that appellant had sexual contact with AJ by touching
her breast.
Legal sufficiency
          The testimony of the child victim alone is sufficient to support a conviction for
indecency with a child by contact. Lee v. State, 186 S.W.3d 649, 655 (Tex.
App.—Dallas 2006, pet. ref’d). AJ testified at trial about the “garage incident” as
follows:
[AJ]: Well, he turned the light off in the garage and he told me to get on
the back of the car and he started kissing me on my neck and he tried to
kiss me on my mouth, but I wouldn’t let him because he smelled like
cigarettes. He told me to touch his penis, so I did. He started touching
my breast under my shirt. I wouldn’t let him get inside of my pants,
though.
 
[Prosecutor]: Stop there. When you said he started touching your breast,
did he touch — where did he touch you on your breast?
 
[AJ]: My nipple.
 
[Prosecutor]: Was it skin to skin?
 
[AJ]: Yes.

          AJ’s testimony that appellant touched her breast while kissing her in the garage
is legally sufficient to support a conviction for indecency with a child by contact.
Factual sufficiency
          Appellant again contends that the evidence is factually insufficient because “the
complainant’s credibility was patently suspect.” Again, appellant points out that AJ
lied to Children’s Assessment Center workers and that her own mother testified that
she did not have a good reputation for truth and veracity.
          For the same reasons given in our resolution of appellant’s factual-sufficiency
claim in the sexual assault of a child case, we also reject his factual-sufficiency
challenge in the indecency with a child case. See Cain, 958 S.W.2d at 408–09 (noting
that in factual-sufficiency challenge, issue of credibility is within sole province of jury). 
          Because we hold that the evidence is legally and factually sufficient to support
appellant’s conviction for indecency with a child by contact, we overrule points of error
eight and nine in cause number 01-05-00818-CR.
 
Conclusion
          We affirm the judgments of the trial court.
 
 
 
                                                                        Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish. Tex. R. App. P. 47.2(b).