Opinion issued May 8, 2008

















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00144-CR






JOSE CLINTON SANTOS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1072597






MEMORANDUM OPINION

 A jury convicted appellant, Jose Clinton Santos, of burglary of a habitation (1)
and assessed punishment at imprisonment for 10 years. In two points of error,
appellant argues that (1) he received ineffective assistance of counsel because his trial
counsel failed to object to the hearsay testimony of witnesses and (2) the evidence is
factually insufficient to sustain appellant's conviction for burglary of a habitation.

 We affirm.

Background

 The complainant, Stacy Willeford, and her sister, Megan Manning, arrived at
their home on January 10, 2007 at approximately 3:00 p.m. They noticed an
unfamiliar black sport utility vehicle parked in the driveway. The two sisters went
to the back of the home to investigate and found the back door had a broken window
and was left standing open. Upon entering the house, the complainant saw appellant
pushing her television on a rolling computer chair toward the open door. Manning
recognized appellant based on what she later told the complainant was a slight
acquaintance of only a few days. (2) Appellant left the house and returned to the black
sport utility vehicle. As the complainant followed appellant outside, she called 911. 
The complainant noticed a woman sitting in the front seat of the black vehicle and an
infant in a car seat in the back. As appellant attempted to back out of the driveway
around the complainant's vehicle, the complainant removed a shirt appellant had used
to cover his license plate and copied down his license plate number.

 Deputy J. Klafka responded to the complainant's call and made observations
of the scene. She noted that a windowpane in the complainant's back door had been
broken, apparently by the brick that was lying on the floor inside the complainant's
residence. She also noticed that a large television was sitting on a chair propped up
against a wall.

 Deputy Klafka used the license plate number to obtain the address listed with
appellant's vehicle's registration. Deputy T. Wright drove to the address and found
a home that was vacant and listed for sale; however, a neighbor told the deputies that
a black vehicle entered the garage a little earlier. Deputy Wright discovered that the
residence belonged to appellant's mother. Deputy Wright contacted appellant's
mother and received her permission for deputies to search the premises. The deputies
found a black vehicle matching the complainant's description in the garage. The
vehicle was full of clothing and other items, and appellant's driver's license and
social security card were on the driver's seat.

 Deputy Klafka took the complainant to the residence where the vehicle was
found, and the complainant identified the vehicle as the one used by appellant. The
complainant also identified some of her personal belongings, mostly clothing, that
had been taken by appellant, and she called Manning on the telephone to confirm that
some compact discs found in appellant's vehicle belonged to her. The deputies also
found some discarded clothing inside the house that the complainant recognized as
those worn by appellant when she saw him earlier at her own residence. The deputies
gave appellant an opportunity to return to his mother's house and to explain his
presence at the complainant's residence, but appellant failed to do so.

 Appellant's version of the story differs greatly from that presented by the State. 
Appellant testified at trial that he had been involved in a romantic relationship with
Manning for approximately one month. Appellant claimed that he went to the
complainant's residence on January 10, 2007 to end his relationship with Manning
and to return some of her personal belongings. Appellant testified that the
complainant and Manning were both home when he arrived and that he parked his
vehicle behind the complainant's. Appellant claimed that he spoke to Manning from
outside the doorway until Manning realized that appellant had brought his son and
his son's mother to her home. At that point, appellant claims that he and Manning
began to argue. As appellant prepared to leave, the complainant came outside and
called the police.

 Appellant claims that he never entered the complainant's residence that day or
took any of her belongings. He testified that any of the complainant's possessions
that were in his vehicle were there because Manning had left them. He stated that he
did not respond to the deputies' attempts to contact him after the incident because he
feared being sent to jail again and missing the birth of his second child. Instead, he
changed his clothes and left with a friend.

Ineffective Assistance of Cousnel

 In his first point of error, appellant contends that he was denied his right to the
effective assistance of counsel because his trial counsel failed to object to testimony
of the complainant and Deputy Klafka containing hearsay statements made by
Manning.

 Manning's out of court statements first arose during the complainant's
testimony at trial, when the following exchange took place:

[Complainant]: I walked in and saw this guy standing in my living
room with my TV and I was like, you know, What
are you doing, who are you? And my sister was like,
[appellant], what are you doing?


[Trial counsel]: Objection, Your Honor. Hearsay.


[Court]: Well, overrule, if it's to the defendant's statement. 
Do we know who she's talking about at this point, if
you want to clarify.


[State]: Now, remember, [complainant], we can't go into
what anybody else said besides--we can go into
what the defendant said.


[Complainant]: Okay.


[State]: So, you know, we can get into the comments he
made to you but not the comments that your sister
made at that time.


[Complainant]: Okay.


 After the State made it clear to the complainant that she could not repeat
Manning's out of court statements, the State continued to question the complainant
regarding her knowledge of Manning's relationship with appellant. Appellant
complains particularly of the following testimony:

[State]: Did your sister tell you she recognized the person in
the home?


[Complainant]: Yes.


[State]: Did she know his name? Did she tell you she knew
his name?


[Complainant]: She knew him [by his first name].


[State]: Okay. And are you aware whether she had any kind
of relationship with him?


[Complainant]: Not that I know of.


[State]: Did she know his last name?


[Complainant]: No.


[State]: And did she ever volunteer that she had a
relationship with him when she saw him trying to
break into your house?


[Complainant]: No.


[State]: And have you talked about the events of that day
with your sister after the fact, extensively?


[Complainant]: Well, we've talked about it--we did a couple of
times and then now that court is here, we've talked
about it a couple of times.


[State]: And has she ever told you in that time that she ever
had a relationship?


[Complainant]: No. She led me to believe that she barely knew him,
I mean. She had been around him a couple of times
but she never told me that there was a relationship.


 Appellant also complains about hearsay statements elicited by his trial counsel. 
Appellant's trial counsel elicited the following testimony from the complainant:

[Trial counsel]: So you identified your sister's CDs?


[Complainant]: Right.


[Trial counsel]: You called her on the phone to identify them?


[Complainant]: I asked her if she was missing them and she said she
wasn't sure and I started naming them and
describing the book that they were in and she said
yeah.


Trial counsel questioned the complainant further about the approximate value of the
compact discs and other belongings taken by appellant. He also asked the
complainant when Deputy Klafka made the inventory of stolen items and whether it
was ever checked against the items actually found. Appellant's trial counsel's
questions emphasized that most of the items recovered from appellant's vehicle were
clothing and Manning's compact discs.

 Appellant's trial counsel also questioned Deputy Klafka, eliciting the following
allegedly objectionable testimony:

[Trial counsel]: [Y]ou had a discussion with [Manning] at [the
complainant's house], correct?


[Deputy Klafka]: Yes, sir.


[Trial counsel]: And she said she recognized [appellant], isn't that
right?


[Deputy Klafka]: Yes, sir.


[Trial counsel]: She said she knew him?


[Deputy Klafka]: Yes, sir.


[Trial counsel]: [The complainant] did not say that she knew him?


[Deputy Klafka]: No, sir.


[Trial counsel]: Said she did not know him, correct?


[Deputy Klafka]: Yes, sir.


[Trial counsel]: You never showed her a photo spread or anything,
right?


[Deputy Klafka]: No, sir.


[Trial counsel]: You never showed [Manning] a photo spread either?


[Deputy Klafka]: No, sir.


[Trial counsel]: That's because you felt confident she knew who he
was?


[Deputy Klafka]: Yes, sir.


The State then conducted its redirect examination of Deputy Klafka, responding to
some of the lines of questions raised by appellant's trial counsel. Appellant mentions
the following exchange during the State's redirect examination of Deputy Klafka as
introducing hearsay testimony:

[State]: Deputy, was [Manning] ever able to give you a last
name for [appellant]?


[Deputy Klafka]: No, ma'am.


[State]: Was she able to give you a phone number?


[Deputy Klafka]: I don't remember a phone number.


[State]: Was she ever able to give you an address for him?


[Deputy Klafka]: I don't think so.


[State]: So she was never able to give you anything other
than his [first name]?


[Deputy Klafka]: Yes, ma'am.


[State]: Permission to approach the witness, Your Honor?


[Trial court]: Yes.


[State]: Would reading your offense report refresh your
memory as to what [Manning] was able to tell you
about the person in her home?


[Deputy Klafka]: Yes, ma'am. Okay.


[State]: Did she tell you when she had met [appellant]?


[Deputy Klafka]: Yes, ma'am.


[State]: And when was that?


[Deputy Klafka]: On the Saturday before this incident.


[State]: Was that January 7th?


[Deputy Klafka]: Yes, ma'am.


[State]: And this happened on January 10th?


[Deputy Klafka]: Yes, ma'am.


 Upon the completion of the State's redirect examination, appellant's trial
counsel resumed his questioning of Deputy Klafka:

[Trial counsel]: So, Deputy, she told you that she had met him three
days before the incident?


[Deputy Klafka]: Yes, sir.

[Trial counsel]: Or two nights before the incident, I guess?

[Deputy Klafka]: Yes, sir.

 Standard of Review

 We evaluate the effectiveness of counsel under the two-pronged test enunciated
in Strickland v. Washington. 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);
Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). First, appellant
must show that his trial counsel's representation was deficient and fell below an
objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at
2064. To prove this deficiency in representation, the defendant must demonstrate that
his counsel's performance deviated from prevailing professional norms. Id. at 688,
104 S. Ct. at 2065; McFarland v. State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992). 
Second, the defendant must show prejudice. Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064. This requires the defendant to show that there is a reasonable probability
that, but for his trial counsel's unprofessional errors, the result of the proceeding
would have been different. Id. at 694, 104 S. Ct. at 2068. A reasonable probability
is a probability sufficient to undermine confidence in the outcome. Id. The failure
to satisfy one prong of the Strickland test negates a court's need to consider the other. 
Id. at 697, 104 S. Ct. at 2069.

 Appellant bears the burden of proving by a preponderance of the evidence that
his counsel was ineffective. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). Appellant must prove, by a preponderance of the evidence, that there is no
plausible professional reason for a specific act or omission. Bone v. State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002). Appellant must overcome the presumption that his
trial counsel's strategy was sound and must affirmatively demonstrate the alleged
ineffective assistance of counsel. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim.
App. 2003); Thompson, 9 S.W.3d at 814. We cannot speculate beyond the record
provided; rather, a reviewing court must presume that the actions were taken as part
of a strategic plan for representing the client. See Rylander, 101 S.W.3d at 110.

 At the outset, we note that the record does not provide any explanation of
appellant's trial counsel's strategy on this point. In the absence of a proper
evidentiary record, it is extremely difficult to show that appellant's trial counsel's
performance was deficient, and we must presume that his actions were taken as part
of a strategic plan for representing his client. Id. at 110-11.

 Analysis

 Assuming without deciding that portions of the complainant's or Deputy
Klafka's testimony regarding the relationship between Manning and appellant or the
identification of the compact discs were inadmissible hearsay, appellant has failed to
prove by a preponderance of the evidence that his trial counsel had no plausible
professional reason for eliciting the testimony or for not objecting when the State
conducted redirect examination on the same topics. See Thompson, 9 S.W.3d at 814
(holding deficient performance not shown when record provided no references to
explain why counsel failed to object to attempts to elicit inadmissible hearsay); see
also Darby v. State, 922 S.W.2d 614, 624 (Tex. App.--Fort Worth 1996, pet. ref'd)
("A failure to object to inadmissible hearsay does not always constitute ineffective
assistance of counsel."). Indeed, appellant's trial counsel could have had a plausible
reason for eliciting testimony regarding the nature and degree of familiarity between
Manning and appellant, especially considering that appellant's defensive theories
required the jury to believe that Manning and appellant had had a close relationship
over the past month. See Darby, 922 S.W.2d at 623-24 (holding that what appeared
to be inadmissible hearsay was reasonably justifiable as sound trial strategy
considering the testimony that was already before the jury). Had trial counsel pursued
a hearsay objection to the complainant's and Deputy Klafka's testimony, the State
might have chosen to call Manning as a witness and introduce the evidence through
her direct testimony. Trial counsel might have believed that Manning's direct
testimony would have been more damaging to appellant's defensive theories than the
evidence offered at trial. See Ortiz v. State, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002)
("[H]ad defense counsel pursued a hearsay objection . . . the State might have chosen
to introduce the evidence directly through [the out of court declarants]. Defense
counsel might have believed that such direct evidence would have a more powerful
and adverse effect on the jury than the evidence the State was content to offer.").

 Appellant argues that his trial counsel could not have had any reasonable
strategy for eliciting or allowing this testimony because it "directly contradicted the
possibility of any significant relationship between [Manning] and [appellant]." 
However, the fact that a strategy led to an undesirable result does not mean that
counsel had no plausible strategy. See Wilkerson v. State, 726 S.W.2d 542, 548 (Tex.
Crim. App. 1986) (holding that Strickland test is to be applied at time of trial, not
through hindsight); see also Thompson, 9 S.W.3d at 813 (cautioning appellate courts
to avoid "deleterious effects of hindsight" when reviewing claims of ineffective
assistance of counsel). We have no record revealing trial counsel's strategy or
motivation, and we will not speculate beyond the record provided. See Rylander, 101
S.W.3d at 110. We hold that appellant has not defeated the strong presumption that
his trial counsel's actions fell within the wide range of reasonable professional
assistance. See Thompson, 9 S.W.3d at 814. Because appellant has failed to satisfy
the first prong of the Strickland analysis, we do not consider the second prong. See
Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

 We overrule appellant's first point of error.

Factual Sufficiency

 In his second point of error, appellant argues that the evidence was factually
insufficient to support his conviction for burglary of a habitation with intent to
commit theft. Factual sufficiency analysis is broken down into two prongs. First, we
must ask whether the evidence introduced to support the verdict, although legally
sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly
unjust. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (quoting
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Second, we must ask
whether, considering the conflicting evidence, the jury's verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the evidence. 
Id. at 415. In conducting this review, we view all of the evidence in a neutral light. 
Id. at 414. We are also mindful that a jury has already passed on the facts and that we
cannot order a new trial simply because we disagree with the verdict. Id. What
weight to give contradictory testimonial evidence is within the sole province of the
jury because it turns on an evaluation of credibility and demeanor. Cain v. State, 958
S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Therefore, we must defer appropriately
to the fact finder and avoid substituting our judgment for its judgment, and we may
find evidence factually insufficient only when necessary to prevent manifest injustice. 
Id. at 407; see also Johnson, 23 S.W.3d at 12.

 A person commits the offense of burglary if, "without the effective consent of
the owner, the person . . . enters a habitation . . . with intent to commit a felony, theft,
or an assault; or . . . enters a building or habitation and commits or attempts to commit
a felony, theft, or an assault." Tex. Pen. Code Ann. § 30.02(a) (Vernon 2003).

 The complainant testified that one of the windowpanes in her back door was
broken and that she found appellant in her home, moving her television on a rolling
computer chair toward the door. Deputy Klafka testified that when she arrived on the
scene, she observed that the glass on the door had been broken in such a way as to
allow someone to reach the door knob on the inside. Deputy Klafka also testified that
she saw a large television set on top of a chair and resting against a wall. After
locating appellant's vehicle using the license plate number, deputies recovered some
of the complainant's property from appellant's vehicle. The evidence supporting the
jury's verdict that appellant entered the complainant's residence without her consent
and committed or attempted to commit theft is not so weak that the verdict seems
clearly wrong or manifestly unjust. See Watson, 204 S.W.3d at 414-15.

 Furthermore, the conflicting evidence is not so strong that the verdict is against
the great weight and preponderance of the evidence. See id. at 415. Appellant argues
that he was at the complainant's residence in order to end his romantic relationship
with Manning and that the evidence does not support the State's claim that he was at
the house to commit theft. Specifically, appellant asserts that the complainant gave
conflicting testimony that does not support the jury's verdict because in a few
instances she gave inconsistent testimony regarding her sister's whereabouts. The
complainant stated that Manning entered the residence with her, but later, when she
placed the 911 call, the complainant stated that her sister was outside. Appellant also
points to his own testimony regarding where his vehicle was parked, which conflicted
with the complainant's testimony that she parked her vehicle behind appellant's
vehicle when she arrived at her residence, and to the fact that deputies did not find his
fingerprints inside the complainant's home. However, what weight to give
appellant's and the complainant's testimony was in the sole province of the jury. See
Cain, 958 S.W.2d at 408-09. A holding is not manifestly unjust merely because the
jury resolved conflicting views of the evidence in favor of the state. Id. at 410. Nor
does the absence of some particular piece of evidence, such as appellant's
fingerprints, make the verdict "clearly wrong and manifestly unjust." See Watson,
204 S.W.3d at 414-15.

 Appellant further argues that no evidence supports the complainant's claim that
he was trying to take her television because he would not attempt to burglarize a
house with his child and the child's mother present and that other testimony showed
that his vehicle had no room to fit a large screen television. Appellant also testified
that the compact discs found in his vehicle belonged to him and his friends. 
However, the complainant testified that she observed appellant attempting to move
the television toward the door on a rolling computer chair, and Deputy Klafka's
testimony supported the complainant's version of events. Furthermore, deputies
recovered some of the complainant's missing items from appellant's vehicle. 
Appellant's conflicting evidence is not so strong that the jury's verdict is against the
great weight and preponderance of the evidence. See id. at 415.

 We overrule appellant's second point of error.

CONCLUSION

 We affirm the judgment of the trial court.







 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.


Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 30.02 (Vernon 2003).
2. Manning was in school in Chicago and was unavailable to testify at trial. The record
does not reveal what steps, if any, were taken to procure her testimony for trial.