**AFFIRM; and Opinion Filed December 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01186-CR**

**KEITH ALLEN FOSTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-80380-2014**

# MEMORANDUM OPINION

Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice O'Neill

A jury convicted Keith Allen Foster of continuous sexual abuse of a young child. The trial court assessed punishment at fifty years' imprisonment. In two issues, appellant contends the evidence was legally insufficient to support his conviction, and the trial court erred in admitting an exhibit. We affirm the trial court's judgment.

## BACKGROUND

This case arose from an outcry of sexual abuse that nine-year-old complainant E.G. made against appellant, her stepfather. E.G. made the outcry to her sister B.G. and B.G.'s friend and frequent house guest, J.W. J.W. also accused appellant of improper behavior. Appellant was tried

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

jointly for continuous sexual abuse of a young child against E.G. and for indecency with a child committed against J.W. Appellant entered pleas of not guilty to both counts.[2]

During trial, B.G. testified that she and J.W. approached E.G. to ask about sexual abuse because B.G. had noticed that E.G. was acting skittish around people and wetting the bed. B.G. testified appellant would take E.G. in a bedroom and close the door, ostensibly to receive a back massage from her. Although B.G. did not testify at trial that she was abused, J.W. testified that she and B.G. told E.G. "about what had happened to us and that it was okay to tell us what happened to her, if it happened." Recounting her own experience, J.W. testified she had awakened one night during a sleepover with B.G. to find appellant spreading her legs, moving her shorts and undergarments out of the way to expose her private part, and "trying to look down there." When she asked what he was doing, appellant explained he was just checking on her.

E.G. testified that appellant touched her "pee pee" both on top and under her underwear; he made her touch his "wee wee" with her hands; he made her rub his penis; and he made her touch his penis with her mouth while he "put his hand on [her] and pushed [his penis] up and down" on her mouth. E.G. also gave him back massages while no one else was in the room. E.G. testified that these events happened over a period of time and she answered affirmatively when asked if "it would happen one month and then it would be two or three weeks  or a month later and it would happen again." E.G. testified she revealed the sexual abuse to B.G. and J.W. "[b]ecause they said that it happened to them and they wanted to know if it happened to me."

After E.G.'s outcry, the three girls informed B.G.'s and E.G's grandmother, aunt, and mother about what had happened. When confronted by the mother, appellant denied the accusations. After the police were called, all three girls were referred to the Collin County Children's Advocacy Center for forensic interviews. Michelle Schuback, the case manager of the

---

[2] The jury could not reach a verdict on the indecency charge and a mistrial was declared.

advocacy center, conducted E.G.'s forensic interview. Schuback testified that E.G. gave her consistent chronological details and the kind of sensory details that she would expect from a child victim of sexual abuse. Schuback testified E.G. told her that appellant would put his hand in E.G.'s panties and rub her private area. Schuback also demonstrated for the jury the "up and down" hand motion appellant made E.G. perform when she was touching his private area. In addition to the acts of sexual abuse, Schuback recounted that E.G. told her that appellant told her that he loved her, and that he directed her that if she stopped performing the sexual acts she was doing to him, she would have to start all over again. He made her "pinky promise" that she would not disclose the sexual abuse to anyone. Schuback testified E.G. told her the acts of sexual abuse took place when E.G. was eight and nine years old. Based on E.G.'s answers to her questions, Schuback, who had conducted over 2,000 forensic interviews, was not concerned about the possibility of E.G. being coached to provide a false accusation.

Sergeant Jim Blackburn, the detective assigned to the case, testified that he watched E.G's interview from a remote location, and he subsequently interviewed appellant. The detective testified appellant denied the allegations against him but did admit to receiving back massages from E.G. Blackburn also testified appellant was carrying a cell phone when he was arrested. Appellant told Blackburn that the phone belonged to B.G. B.G.'s mother testified that she bought the cell phone for B.G. and paid for it. Both the mother and B.G. testified the phone would be confiscated as punishment when B.G. misbehaved. The mother estimated the phone would be taken for anywhere from a few hours to a week. B.G. testified the phone was taken for a week to a couple of months. B.G. also testified that appellant took her phone for his personal use for a long period of time while his was broken.

As part of the investigation of the offense, police obtained a search warrant to examine the cell phone appellant was carrying. Sergeant Chris Meehan, an officer trained in computer

forensics, testified that he used a "Cellebrite" device to extract the data from the phone. The device generates a report detailing the evidence retrieved from the phone. Over appellant's objection, a two-page printout from the report detailing the phone's web history was admitted into evidence. Meehan testified about the contents of the report which showed someone had made numerous searches using explicit terms to search for child erotica and there had been visits to pornographic websites featuring child erotica. Meehan identified the search term "Lolita" taken from the phone as being the most commonly used search term for child pornography. Meehan testified that in his experience, few teenage girls are familiar with or use search terms like "Lolita" or "erotica."

## LEGAL INSUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence presented was legally insufficient to support his conviction because E.G. did not mention the abuse until B.G. and J.W. asked her about it, no other witness corroborated her allegations of sexual abuse, there were "factual inconsistencies" in the testimony of E.G., B.G., and J.W. regarding the details of the outcry conversation, and Schuback did not investigate the possibility that E.G. had been coached. Appellant further contends there is no evidence showing his criminal intent.

In reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). Under the standard, the trier of fact is the sole judge of the weight and credibility of the evidence, resolves conflicts in testimony, and is empowered to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860.

–4–

To convict a person of the offense of continuous sexual abuse of a young child, the State must show the defendant is over seventeen years of age and the defendant committed two or more acts of sexual abuse against a child or children under the age of fourteen over a period that is more than thirty days in duration. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2015). Acts that qualify as "sexual abuse" under the statute include indecency with a child, sexual assault, and aggravated sexual assault. *Id.* at §21.02(c).The jury need not agree unanimously on which specific acts of sexual abuse occurred or the exact date of those acts. *Id.* at §21.02(d).

E.G. testified that appellant, in intervals of a few weeks to a month apart, touched her vagina both over and under her underwear, made her touch his penis with her hand and rub it, and made her put his penis on her mouth while he "pushed it up and down." The testimony of a child victim, standing alone, is sufficient evidence to support a conviction for continuous sexual abuse of a young child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2015); *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd). The significance of E.G.'s silence about the abuse until she was asked, the lack of eyewitness corroboration, and any inconsistencies in the testimony, are issues of weight and credibility resolved by the jury. *See Adames*, 353 S.W.3d at 860.

Likewise, appellant questioned Schuback about possible coaching and placed the issue before the jury. Appellant presented no evidence showing E.G. was coached. E.G. consistently accused appellant of sexually abusing her in conversations with B.G. and J.W., her mother, and with Schuback. Schuback, a highly experienced forensic interviewer, testified that she did not pick up on any signs that E.G. was coached and saw no reason to further investigate. The jury assessed the weight and credibility to give to Schuback's opinion. *See id.*

Appellant's intent can be inferred from his words, acts, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The evidence establishes appellant sexually

abused E.G. over an extended period of time, and he made her promise not to tell anyone about the acts of sexual abuse. He also conducted internet searches for child pornography and visited websites with that theme. The jury could have inferred appellant's intent from the evidence presented. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981) (concluding jury could infer intent to arouse or gratify sexual desire when defendant touched child's genitals "to see if she is clean" and then promptly left in his car); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (jury could infer intent to arouse or gratify sexual desire from defendant's act of touching child's genitals and fact that conduct occurred on other occasions). Viewed in the light most favorable to the verdict, the evidence was sufficient to support the conviction. *See Jackson*, 443 U.S. at 319. We overrule appellant's first issue.

## ADMISSION OF EVIDENCE UNDER RULE 403

In his second issue, appellant contends the trial court erred in admitting into evidence a portion of the Cellebrite report detailing the web history pulled from his cell phone. Appellant contends the exhibit was not properly authenticated and its probative value was substantially outweighed by the danger of unfair prejudice under rule of evidence 403. *See* TEX. R. EVID. 403. The State responds that the evidence was properly authenticated, it was more probative than prejudicial, and any error in admitting it was harmless.

We review the trial court's decision regarding admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court abuses its discretion only if its decision lies outside the zone of reasonable disagreement. *Davis  v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. EVID. 403. The trial court uses a balancing to test to determine whether to admit the evidence. *Cameron*, 241 S.W.3d at 19. Rule 403 favors the admission of relevant evidence

and we presume that relevant evidence is more probative than prejudicial. *Davis*, 329 S.W.3d at 806.

Appellant first contends the State failed to authenticate the exhibit by linking him to the phone. Appellant contends there was no showing that the phone was his property, that he owned an account linked to the phone, or that it was connected to him in any way other than by possession of it.

The record shows appellant's wife, B.G.'s mother, paid for B.G.'s phone account. Appellant admitted the phone he was carrying was B.G.'s phone. The record shows appellant possessed the phone for a long time after his own phone broke. Meehan opined that it was unlikely that a teenage girl would be familiar with search terms like "Lolita" and "erotica." It was the jury's prerogative to determine whether appellant or B.G. was responsible for generating the pornographic web history on the phone. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. The discovery of the phone in appellant's possession, the testimony that he had possessed it for a considerable period of time, and the reasonable inference that he, rather than B.G., conducted the website searches, authenticates the phone as belonging to appellant. *See* TEX. R. EVID. 901(a). We conclude the trial court did not abuse its discretion in concluding the phone had been properly identified and authenticated.

Appellant next argues that the admission of the evidence resulted in undue prejudice to him. The State responds that the evidence is probative of his intent to arouse or gratify sexual desire and was not unduly prejudicial because it did not take long to develop and consisted only of a written report without any actual pornographic images. We agree with the State.

Evidence of a defendant's use of pornography is admissible when there is a clear nexus between the pornography and the offense. *See, e.g.*, *Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2007, pet. ref'd) (photographs found in defendant's computer depicting

sexual acts involving underage boys admissible in prosecution for aggravated sexual assault of a preteen boy as evidence of intent to arouse or gratify sexual desire); *Darby v. State*, 922 S.W.2d 614, 620 (Tex. App.—Fort Worth 1996, pet. ref'd) (no error in admitting magazine depicting sexually explicit photographs of young female posing with teddy bear when defendant was accused of fondling underage victim while taking her picture posed with a teddy bear).

Evidence that appellant searched for and observed child pornography, particularly searching for terms like "daddy-daughter" and "Lolita" is highly probative of his intent to arouse or gratify his sexual desire by sexually abusing E.G. In contrast, the report does not appear to be unduly prejudicial. Pictures or video were not presented to the jury—only the search terms and website addresses and names. Moreover, the topic was not heavily developed during the trial. Additionally, in light of the presentation to the jury of other more substantial evidence, especially E.G.'s graphic and emotional testimony about the sexual abuse, we are unpersuaded that the report had a strong effect on the jury. Appellant has not shown the report's probative value is substantially outweighed by its prejudicial effect such that it should have been excluded. Because we conclude the report was not unduly prejudicial, we also agree with the State that any error in admitting it was harmless. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/Michael J. O'Neill/
_____
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

141186F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH ALLEN FOSTER, Appellant

No. 05-14-01186-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-80380-2014.
Opinion delivered by Justice O'Neill.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of December, 2015.